1  Laura L. Ho (CA SBN 173179)
   lho@gbdhlegal.com
2  Beth Holtzman (CA SBN 316400)
   bholtzman@gbdhlegal.com
3  GOLDSTEIN, BORGEN, DARDARIAN & HO
   300 Lakeside Drive, Suite 1000
4  Oakland, CA 94612
   Tel:  (510) 763-9800
5  Fax:  (510) 835-1417

6  Attorneys for Plaintiff

7              UNITED STATES DISTRICT COURT

8              NORTHERN DISTRICT OF CALIFORNIA

9  DIMITRI DIXON, individually, and on behalf of      Case No. 3:18-cv-05813-JSC
   all others similarly situated,
10                                                     **FIRST AMENDED COMPLAINT**
11         Plaintiff,
                                                          1.  **Failure to Pay Overtime Wages**
12 vs.
                                                          2.  **Failure to Provide Meal Periods**
13 CUSHMAN & WAKEFIELD WESTERN, INC.,
   a California corporation,                             3.  **Failure to Provide Rest Periods**
14
           Defendants.                                   4.  **Failure to Reimburse Business Expenses**
15
                                                          5.  **Failure to Furnish Accurate Itemized
16                                                            Wage Statements**

17                                                        6.  **Violations of the Fair Labor Standards
                                                              Act**
18
                                                          7.  **Unfair Competition**
19
                                                          8.  **Violation of the Private Attorney
20                                                            General Act of 2004 ("PAGA")**

21                                                        9.  **Failure to Pay All Wages Due Upon
                                                              Termination**
22
                                                       **JURY TRIAL DEMANDED**
23

24

25

26

27

28

768331.12

1    Plaintiff Dimitri Dixon ("Plaintiff"), individually and on behalf of all others similarly situated,

2    alleges as follows:

3    **INTRODUCTION**

4    1.    Plaintiff Dimitri Dixon brings this action individually, and in a representative capacity

5    on behalf of all other similarly situated individuals ("California Class Action Members" or "Class

6    Members" and "Collective Action Members"), against Defendants Cushman and Wakefield Western,

7    Inc. (hereinafter "C&W") for violations of several California Labor Code provisions ("Labor Code"),

8    including Labor Code §§ 203, 226.7, 510, 512, 558, 226, 1174, as well as California Industrial Welfare

9    Commission Wage Orders 4-2001, Cal. Code Regs. Tit. 8, § 11070, as well as 29 U.S.C. §§ 201 *et seq*.

10   2.    Plaintiff and Class Members were employed as appraisers by Defendants since 2007 –

11   eleven (11) years preceding the filing of this action – and were denied the benefits and protections

12   required by the FLSA, Labor Code and other statutes and regulations applicable to non-exempt

13   employees in the State of California.

14   3.    Plaintiff alleges that Defendants **failed to**:

15        a.    Properly classify employees as non-exempt under California law and the

16              FLSA;

17        b.    Pay Plaintiff and Class Members all overtime wages for hours worked in

18              excess of eight (8) hours a day and/or forty (40) hours a week;

19        c.    Provide Plaintiff and Class Members mandated meal periods;

20        d.    Provide Plaintiff and Class Members mandated rest periods;

21        e.    Reimburse Plaintiff and Class Members for all necessary expenditures that

22              they incurred in direct consequence of the discharge of work duties including,

23              but not limited to, the cost of cell phone usage required for work-related

24              purposes;

25        f.    Keep required payroll records that accurately show the total hours Plaintiff

26              and Class Members worked, as well as the wages that should have been paid;

27        g.    Furnish Plaintiff and Class Members with accurate wage statements;

28

768331.12

h.  Comply with the Unfair Competition Law ("UCL"), California Business & Professions Code § 17200 *et seq*.; and

i.  Comply with the Private Attorneys General Act of 2004 ("PAGA"), codified as California Labor Code § 2698 *et seq*.

j.  Pay Plaintiff and Class Members All Wages Due Upon Termination.

## JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1337 and diversity jurisdiction under 28 U.S.C. § 1332.

5.  This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

6.  This Court has supplemental jurisdiction over the California claims pursuant to 28 U.S.C. § 1367 because they are so closely related to the claims under the FLSA that they form part of the same case or controversy under Article III of the United States Constitution.

7.  Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391 because C&W's registered address with the California Secretary of State is 425 Market Street, Suite 2300, San Francisco, CA 94105.  C&W's principal place of business within California is located within this federal district and C&W employs Class Members within this federal district.

8.  Plaintiff fulfilled the administrative prerequisites for filing suit under Labor Code § 2699.3(a).  Specifically, on June 4, 2018, Plaintiff submitted to the California Labor and Workforce Agency ("LWDA") via its website a notice describing the allegations set forth in this Complaint.  A true and correct copy of the Notice (LWDA Case Number LWDA-CM-543235-18) is attached as Exhibit 1.  On the same day, Plaintiff served a copy of the Notice on Defendants via certified mail, as shown in Exhibit 1.  As of sixty-five (65) calendar days after submission of the Notice to the LWDA, the LWDA had provided no notice to Plaintiff regarding its intention to investigate (or not investigate) Plaintiff's claims.  Plaintiff timely submitted a filing fee of $75 to the LWDA.  On August 14, 2018, Plaintiff submitted to the LWDA a notice describing additional allegations set forth in this Complaint.  A true and correct copy of the Notice is attached as Exhibit 2.  On the same day, Plaintiff served a copy of the Notice on Defendants via certified mail, as shown in Exhibit 2. As of sixty-five (65)

768331.12

1    calendar days after submission of the Notice to the LWDA, the LWDA has provided no notice to

2    Plaintiff regarding its intention to investigate (or not investigate) Plaintiff's claims.  Plaintiff timely

3    submitted a filing fee of $75 to the LWDA.  On August 16, 2019, Plaintiff submitted to the LWDA a

4    notice describing additional allegations set forth in this Complaint.  A true and correct copy of the

5    Notice is attached as Exhibit 3.  On the same day, Plaintiff served a copy of the Notice on Defendants

6    via certified mail, as shown in Exhibit 3. As of sixty-five (65) calendar days after submission of the

7    Notice to the LWDA, the LWDA has provided no notice to Plaintiff regarding its intention to

8    investigate (or not investigate) Plaintiff's claims.  Plaintiff timely submitted a filing fee of $75 to the

9    LWDA.

10    **PARTIES**

11    9.     Plaintiff Dimitri Dixon is an adult individual who resides in Tustin, CA.  Plaintiff is a

12    "person" under California Business & Professions Code § 17201 and California Labor Code § 18.  She

13    brings this action individually and on behalf of all others similarly situated in the State of California.

14    Plaintiff was employed as an Appraiser Trainee[1] by C&W and worked in that capacity from September

15    2007 to December 10, 2018.

16    10.     Defendant Cushman and Wakefield Western, Inc. is a commercial real estate services

17    company.  Upon information and belief, C&W offers investment and asset management, project and

18    development, and valuation and advisory services, among other services.  Upon information and belief,

19    C&W has 26 offices throughout California, and related corporate entities have offices in New York

20    and Illinois, as well as non-U.S. offices in locations such as London and Singapore.

21    11.     C&W is a "person" under California Business & Professions Code § 17201 and

22    California Labor Code § 18.

23    12.     Cushman and Wakefield Western, Inc. is a California corporation based in San

24    Francisco, California, with an "entity address" registered with the California Secretary of State as 425

25    Market Street, Suite 2300, San Francisco, CA 94105.  At all times relevant hereto, C&W is, and has

26    been, authorized to, and does, conduct business in the State of California.

27

28    [1] Ms. Dixon's official job title was "Associate Director," though she is referred to and identified as an "Appraiser Trainee" at all relevant times.

768331.12

**FACTUAL ALLEGATIONS**

13.     Plaintiff was an employee of C&W, a commercial real estate services company. Plaintiff began working as an Appraiser Trainee on September 17, 2007.  As an Appraiser Trainee, Plaintiff's duties included appraising the value of real estate investments, researching property sales, listings, and rentals, constructing financial models, researching financial information, preparing appraisals for firm clients, and inspecting property.

14.     Plaintiff worked across several practice areas within C&W 's Valuation Advisory Group, and began working as an Appraiser Trainee in the Senior Housing practice area, supervised by Ryan McCafferty.  Upon information and belief, around June 2013, Plaintiff transferred to the Auto Specialty practice area, supervised by Chris Kelsey.  Plaintiff most recently worked within C&W's Auto Specialty practice area.

15.     Throughout her tenure at C&W, Plaintiff actively sought a state-certified appraisal license.  Plaintiff held an Appraiser Trainee license.  Plaintiff's licensure status affected the number of C&W projects that she could complete.

16.     Plaintiff was compensated through a "recoverable draw" scheme.  At the beginning of each year of her employment, Plaintiff was required to sign a standard promissory note with C&W, where she agreed to pay C&W the balance of a fixed sum of money equal to her annual compensation. Each employee then receives a bi-monthly draw against this obligation, which is the sole basis of compensation.  Such "draw" payments constitute advancements to Plaintiff, which Plaintiff owes to C&W in the form of debt.  The promissory note allows C&W, among other things, to recoup the entire balance of the advanced sum at any time, including after the employee-employer relationship terminates.

17.     Appraisers work on assigned projects that generate fees.  Such fees are intended, in part, to cover their bi-monthly draw payments and satisfy outstanding debt obligations.  Employees earn fees through a complicated fee arrangement, which is stipulated in their employment contracts.  A portion of the fees generated by employees – including Plaintiff – are set aside for Defendants, to account for and offset various accrued expenses and costs, including referral fees, supervisory offsets

4

1   and other miscellaneous costs.  Upon information and belief, beginning around June 2013, fees earned

2   by Plaintiff for completed projects were significantly reduced due to "supervisory offsets."

3          18.     Upon information and belief, C&W calculates the total fee amount generated by

4   appraisers (minus any deductions made pursuant to the employment contract), as well as the total

5   amount of draw payments made that period; the draw payments are then deducted from the fees

6   collected.  Any positive amount is paid to the employee.  Any negative amount is carried forward as

7   debt owed to C&W, which must be settled by appraisers.

8          19.     Plaintiff's employment contract states that she may not receive less than the draw

9   payments.  The employment contract further states that the draw payments "are loans to be repaid to

10  C&W upon demand."  The employment contract states that if an appraiser's fee share does not

11  sufficiently reimburse C&W for their advanced draw payments, employees are personally liable to

12  C&W.

13         20.     Plaintiff has consistently carried forward a deficit while working for C&W.  Plaintiff

14  worked on C&W projects with the goal of settling mounting deficits resulting from the combined draw

15  payments and promissory note obligations.

16         21.     In 2017, C&W held a promissory note against Plaintiff for $54,000, which was equal to

17  the total bi-monthly draw payments received throughout the year.

18         22.     Plaintiff repeatedly alerted her supervisors that her deficit was beginning to grow and

19  that the fee split with her supervisor precluded Plaintiff from settling the outstanding debt obligations.

20  Plaintiff made two suggestions as ways to settle her obligations: (1) C&W should increase her fee

21  share and/or (2) she should be given additional projects to earn more fees.  Upon information and

22  belief, as of December 2017, Plaintiff was only receiving fifty (50) percent of the total fees generated,

23  and otherwise continued receiving fewer and fewer projects.

24         23.     Upon information and belief, around December 2017, after Plaintiff discussed her

25  decreasing project volume with Lars Platt, a regional leader at C&W, Mr. Platt informed Plaintiff that

26  there simply was not enough business to accommodate Plaintiff's request.

27

28

768331.12

24.     Upon information and belief, around December 2017, Michele Kauffman, a C&W area leader, and another one of Plaintiff's supervisors, told Plaintiff that she should continue to work on obtaining her appraiser license as a way to position herself for more projects at C&W.

25.     On May 16, 2018, Plaintiff received an email stating that, effective June 4, 2018, Plaintiff's recoverable draw compensation would be reduced from $54,000 to $45,760, as Plaintiff had not performed enough work to settle the deficit owed to Defendants.

26.     After a period of receiving few opportunities to conduct appraisals in late 2017 and early 2018, Plaintiff was told that she owed more than $28,000 to C&W and that Plaintiff needed to figure out a way to reduce that figure.

27.     Upon information and belief, on or around May 17, 2018, Plaintiff discussed with Ms. Kauffman the low number of projects she was assigned and her growing draw deficit.  Ms. Kauffman told Plaintiff that C&W did not have work that she could perform, explaining that only a handful of low-level assignments – with correspondingly lower fees – were available.  Additionally, Ms. Kauffman informed Plaintiff that such low-value assignments were not projects that C&W, as a firm, typically took on.

28.     Plaintiff's draw payments were stopped effective June 4, 2018.

29.     Plaintiff's resulting stress, growing deficit, and feeling of helplessness caused Plaintiff severe anxiety, chest pains, and depression.  Because of these symptoms, Plaintiff took medical leave.

30.     Upon information and belief, around 2010, Plaintiff's supervisor, Ryan McCafferty, complained that Plaintiff did not possess a cell phone for work-related usage.  Based on McCafferty's complaint, Plaintiff obtained a cell phone, which she used for work-related purposes.  At no point did C&W provide cell phones to Plaintiff or similarly situated appraisers.  C&W has never compensated Plaintiff for expenses related to the continued use of her cell phone.

31.     On April 15, 2019, Plaintiff was notified of her termination from C&W, effective December 10, 2018.  Defendants alleged that Plaintiff owed a draw balance of $15,632.54 and demanded repayment.

32.     During the applicable time period, Plaintiff and Class Members regularly and consistently worked more than eight (8) hours in a workday and/or more than forty (40) hours in a

1  workweek.  Nonetheless, Defendants failed to pay Plaintiff and Class Members for all hours worked in

2  excess of eight (8) hours in a workday and/or in excess of forty (40) hours in a workweek.

3  33.      Defendants failed to provide Plaintiff and Class Members with meal and rest periods in

4  accordance with California law.

5  34.      Defendants failed to keep accurate payroll records showing the daily hours worked by

6  Plaintiff and Class Members, as well as wages they should have been paid.

7  35.      Defendants failed to furnish Plaintiff and Class Members with accurate itemized wage

8  statements in accordance with California law.

9  36.      Defendants misclassified Plaintiff and Class Members as "exempt" employees.

10  37.      Defendants failed to pay Plaintiff and Class Members all wages due upon termination.

11  38.      C&W employed Plaintiff and Class Members during PAGA's statutory period.

12  **COLLECTIVE ACTION ALLEGATIONS**

13  39.      Plaintiff, on behalf of herself and all Collective Action Members, re-alleges and

14  incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth

15  herein.

16  40.      Pursuant to 29 U.S.C. § 216, Plaintiffs seek to prosecute the FLSA claims as a

17  collective action on behalf of:

18
19         All persons employed by CUSHMAN AND WAKEFIELD WESTERN, INC. as Appraisers[2] assigned to at least one C&W office in any state from three years prior to August 14, 2018 to the close of the opt-in period ("Collective Action Members").
20

21  41.      There are numerous similarly situated current and former Appraisers throughout the

22  United States who would benefit from the issuance of a Court-supervised notice.  Those similarly

23  situated employees are known to C&W and are readily identifiable through C&W's records.

24  42.      Plaintiffs and other Collective Action Members are similarly situated because, among

25  other things, they all: (a) had the same duties; (b) performed the same tasks; (c) were misclassified as

26  exempt from overtime wages; (d) were paid under the same employment contracts and promissory

27

28  [2] *See supra*, note 1.

768331.12

notes; (e) were required, suffered, or permitted to work, and did work in excess of forty hours per week; and (f) were not paid at a rate of one and one-half times their regular rate of pay for all overtime hours worked.

43.     As part of its regular business practice, C&W intentionally, willfully, and repeatedly engaged in a uniform pattern, practice, and/or policy of violating the FLSA with respect to the Collective Action Members.  This policy and pattern or practice included, but is not limited to, willfully: misclassifying Appraisers as exempt from overtime wages; failing to pay Appraisers overtime wages for hours that they worked in excess of forty hours per workweek; and failing to record all of the time that Appraisers worked for the benefit of C&W.

44.     C&W was aware or should have been aware that federal law requires it to pay employees an overtime premium for hours worked in excess of forty hours per workweek.

45.     C&W's deceptive conduct prevented Plaintiff and all other Collective Action Members from discovering or asserting their claims earlier than they did because C&W, among other things, repeatedly declared that Appraisers were exempt from overtime.

### CALIFORNIA CLASS ACTION ALLEGATIONS

46.     Plaintiff, on behalf of herself and all California Class Action Members, re-alleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

47.     Plaintiff seeks to proceed as a class action with regard to their California law claims pursuant to Federal Rule of Civil Procedure Rule 23 on behalf of the following class of persons:

> All persons employed in California by CUSHMAN AND WAKEFIELD WESTERN, INC. as an Appraiser[3] assigned to at least one C&W office from four years prior to August 14, 2018 to the time of class certification ("California Class Action Members").

48.     Plaintiff reserves the right under Federal Rule of Civil Procedure Rule 15 of to amend or modify the class description with greater specificity or further division into subclasses or limitation to particular issues.

---

[3] *See supra*, note 1.

49.     **Numerosity**.  The putative class is so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, and the facts on which the calculation of that number would be based are within the sole custody and/or control of C&W, upon information and belief, C&W has employed over forty Appraisers in California within the last four years.

50.     **Commonality and Predominance**.  Among the proposed class, there is a well-defined community of interest in the questions of law and/or fact involved.  Common questions of law and/or fact predominate over questions that affect only individual California Class Action Members.  Common questions include, but are not limited to:

      a.      Whether C&W is the employer of California Class Action Members;

      b.      Whether C&W's uniform classification of all California Class Action Members as exempt from overtime violated the California Labor Code;

      c.      Whether C&W owes California Class Action Members overtime wages for hours worked greater than forty (40) in a week or eight (8) in a day;

      d.      Whether C&W failed to keep accurate payroll records of hours worked, meal and rest periods taken, and overtime worked in accordance with California law;

      e.      Whether C&W reimbursed California Class Action Members for cell phone expenses for use during working hours;

      f.      Whether the wage statements C&W issued to California Class Action Members included all hours worked and/or rates of pay; and

      g.      Whether C&W's Labor Code violations serve as predicate violations of the UCL;

      h.      Whether C&W failed to pay Plaintiff and Class Members all wages due upon termination of employment.

51.     **Typicality**.  Plaintiff's claims are typical of the claims of the Class as all Class Members are similarly affected by Defendants' wrongful conduct as complained of herein.  Plaintiff

1  was subjected to the same violations of her rights under the law and seeks the same types of relief on

2  the same theories and legal grounds as the members of the class she seeks to represent.

3       52.    **Adequacy of Representation**.  Plaintiff will fairly and adequately represent and protect

4  the interests of the Class Members.  Plaintiff's interests are not in conflict with those of the Class.

5  Plaintiff's counsel are competent and experienced in litigating large employment class actions and

6  other complex litigation matters, including cases involving factual and legal claims similar to those

7  alleged here.

8  **FIRST CAUSE OF ACTION**
**Violations of the Fair Labor Standards Act**

9  **[29 U.S.C. §§ 201 *et seq.*]**

10       53.    Plaintiff, on behalf of herself and all Collective Action Members, re-alleges and

11  incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth

12  herein.

13       54.    C&W has been, and continues to be, an employer engaged in interstate commerce

14  within the meaning of the FLSA.

15       55.    C&W employed and/or continues to employ Plaintiffs and each of the Collective Action

16  Members within the meaning of the FLSA.

17       56.    C&W has had annual gross revenues in excess of $500,000.

18       57.    Plaintiff expressly consents in writing to be a party to these collective actions pursuant

19  to 29 U.S.C. § 216(b).  Plaintiff's written consent to join was previously filed with the Court.

20       58.    C&W has a policy and practice of misclassifying Appraisers, including Plaintiff and

21  Collective Action Members, as exempt from overtime wages.

22       59.    C&W has a policy and practice of refusing to pay any overtime compensation to

23  Appraisers for hours worked in excess of forty hours per week.

24       60.    C&W has violated and continues to violate the FLSA, including §§ 207(a)(1) and

25  215(a) because C&W willfully fails to compensate its Appraisers for all hours worked and at a rate not

26  less than one and one-half times their regular rate of pay for work performed in excess of forty hours in

27  a workweek.

28

61.     As a result of C&W's misclassification of its Appraisers and its attendant failure to record, report, credit, and/or compensate Plaintiff and Collective Action Members, C&W has failed to make, keep, and preserve records with respect to each of its employees sufficient to determine the wages, hours, and other conditions and practices of employment in violation of the FLSA, including §§ 211(c) and 215(a).

62.     C&W's conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of the statute, 29 U.S.C. § 255(a).

63.     Due to C&W's FLSA violations, Plaintiff, on behalf of herself and all Collective Action Members, are entitled to recover from C&W unpaid wages, as well as overtime compensation, an additional amount equal to the unpaid wages and overtime as liquidated damages, reasonable attorneys' fees, and costs pursuant to § 216(b) of the FLSA, as well as further relief as described below.

## SECOND CAUSE OF ACTION
### Failure to Pay Overtime Wages
### [Cal. Labor Code §§ 510, 558, and 1194, and Cal. Code Regs. tit. 8 § 11040]

64.     Plaintiff, on behalf of herself and all California Class Action Members, re-alleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

65.     California Labor Code § 510 and Wage Order No. 4 requires an employer to compensate a non-exempt employee for all work performed in excess of eight hours per workday or forty hours per workweek, at one and one-half times the employee's regular rate of pay.

66.     Plaintiff and Class Members are non-exempt employees.  Neither of the exemptions to California Industrial Welfare Commission Wage Orders 4-2001, Cal. Code Regs. Tit. 8, § 11070 apply.  During the relevant period, Plaintiff and Class Members have not earned a monthly salary equivalent to no less than two (2) times the State's minimum wage for full-time employment.

67.     Plaintiff's entire compensation depends on fees generated from projects assigned by Defendants.  Plaintiff and Class Members' ultimate compensation depends on the quantity of work available.  Therefore, Plaintiff and Class Members have not been paid on a salary basis pursuant to 29 C.F.R. § 541.602(a).  *See Ming-Hsiang Kao v. Joy Holiday,* 12 Cal. App. 5th 947, 959 (2017) (since

state "law was patterned to some extent on federal law, the general approach in interpreting California

law has been to use the federal salary basis test unless some other provision of California law calls for

a more protective standard"); DLSE Manual § 51.6.4 (detailing that the DLSE will enforce the federal

"salary basis test" to the extent that it does not conflict with "California statutory law, case law, or

public policy").

68.     Furthermore, because the promissory notes directly encumber Plaintiff and Class

Members' compensation and allow Defendants to claw back disbursed payments, the compensation

received by Plaintiff and Class Members were not made "free and clear" under 29 C.F.R. § 531.35, and

thus do not constitutive a salary.  *See Ming-Hsiang Kao*, 12 Cal. App. 5th at 959; *see also*, *Takacs v.*

*A.G. Edwards and Sons, Inc.*, 444 F. Supp. 2d 1100, 1108 (S.D. Cal. 2006) (finding that a deficit owed

to an employer because of diminished commissions made the employee's compensation conditional –

not "free and clear" – and therefore not a salary).

69.     C&W misclassified Plaintiff and Class Members as exempt employees.

70.     During all relevant times, C&W required Plaintiff and California Class Action Members

to work in excess of eight hours per workday and forty hours per workweek.  C&W failed to pay the

overtime wages that Plaintiff and California Class Action Members earned.

71.     Due to C&W's Labor Code violations, Plaintiff and Class Members are entitled to

recover from C&W unpaid overtime compensation, interest, reasonable attorneys' fees, and costs

pursuant to the California Labor Code, as well as further relief as described below.

## THIRD CAUSE OF ACTION
### Failure to Provide Meal Periods
**[Cal. Labor Code §§ 226.7, 512, and 1194, and Cal. Code Regs. tit. 8 § 11040]**

72.     Plaintiff, on behalf of herself and all California Class Action Members, re-alleges and

incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth

herein.

73.     California Labor Code § 512(a) states, "[a]n employer may not employ an employee for

a work period of more than five hours per day without providing the employee with a meal period of

not less than 30 minutes.  An employer may not employ an employee for a work period of more than

10 hours per day without providing the employee with a second meal period of not less than 30

768331.12

minutes."

74.    Wage Order No. 4 states, "[n]o employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes."  If no meal period is provided, the Wage Order requires the employer to "pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided."

75.    California Labor Code § 226.7 states, "[a]n employer shall not require an employee to work during a meal … period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission."  Section 226.7 requires an employer to pay one additional hour of pay at the employee's regular rate if the meal or rest period is not provided.

76.    Plaintiff and Class Members are non-exempt employees.  Neither of the exemptions to California Industrial Welfare Commission Wage Orders 4-2001, Cal. Code Regs. Tit. 8, § 11070 apply.  During the relevant period, Plaintiff and Class Members have not earned a monthly salary equivalent to no less than two (2) times the State's minimum wage for full-time employment.

77.    Plaintiff's entire compensation depends on fees generated from projects assigned by Defendants; Plaintiff and Class Members' ultimate compensation depends on the quantity of work available.  Therefore, Plaintiff and Class Members have not been paid on a salary basis pursuant to 29 C.F.R. § 541.602(a).  *See Ming-Hsiang Kao*, 12 Cal. App. 5th at 959 (since state "law was patterned to some extent on federal law, the general approach in interpreting California law has been to use the federal salary basis test unless some other provision of California law calls for a more protective standard"); DLSE Manual § 51.6.4 (detailing that the DLSE will enforce the federal "salary basis test" to the extent that it does not conflict with "California statutory law, case law, or public policy").

78.    Furthermore, because the promissory notes directly encumber Plaintiff and Class Members' compensation and allow Defendants to claw back disbursed payments, the compensation received by Plaintiff and Class Members were not made "free and clear" under 29 C.F.R. § 531.35, and thus do not constitute a salary.  *See Ming-Hsiang Kao*, 12 Cal. App. 5th at 959; *see also*, *Takacs*, 444 F. Supp. 2d at 1108 (finding that a deficit owed to an employer because of diminished commissions made the employee's compensation conditional – not "free and clear" – and therefore not a salary).

79.    C&W misclassified Plaintiff and Class Members as exempt employees.

13

768331.12

80.     C&W does not have a policy or practice of providing meal periods to California Class Action Members, and C&W has not paid employees premium pay for missed meal periods as required by California Labor Code §§ 226.7 and 512, and Wage Order No. 4.

81.     As a result of C&W's unlawful failure to provide meal periods to all California Class Action Members and C&W's failure to pay an hour of premium pay at the regular rate for each missed meal period, Plaintiff and California Class Action Members are entitled to recover one hour of pay at their regular rate of compensation for each workday that a meal period was not provided, plus interest, attorney's fees, and costs, as well as further relief as described below.

**FOURTH CAUSE OF ACTION**
**Failure to Provide Rest Periods**
**[Cal. Labor Code §§ 226.7 and 1194, Cal. Code Regs. tit. 8 § 11040]**

82.     Plaintiff, on behalf of herself and all California Class Action Members, re-alleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

83.     California Labor Code § 226.7 states, "[a]n employer shall not require an employee to work during a … rest … period," and "[i]f an employer fails to provide an employee a ... rest ... period … the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the ... rest ... period is not provided."

84.     Wage Order No. 4 states, "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period.  The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof."  The Wage Orders require an employer to "pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided."

85.     Plaintiff and Class Members are non-exempt employees.  Neither of the exemptions to California Industrial Welfare Commission Wage Orders 4-2001, Cal. Code Regs. Tit. 8, § 11070 apply.  During the relevant period, Plaintiff and Class Members have not earned a monthly salary equivalent to no less than two (2) times the State's minimum wage for full-time employment.

768331.12

86.     Plaintiff's entire compensation depends on fees generated from projects assigned by Defendants; Plaintiff and Class Members' ultimate compensation depends on the quantity of work available.  Therefore, Plaintiff and Class Members have not been paid on a salary basis pursuant to 29 C.F.R. § 541.602(a).  *See Ming-Hsiang Kao*, 12 Cal. App. 5th at 959 (since state "law was patterned to some extent on federal law, the general approach in interpreting California law has been to use the federal salary basis test unless some other provision of California law calls for a more protective standard"); DLSE Manual § 51.6.4 (detailing that the DLSE will enforce the federal "salary basis test" to the extent that it does not conflict with "California statutory law, case law, or public policy").

87.     Furthermore, because the promissory notes directly encumber Plaintiff and Class Members' compensation and allow Defendants to claw back disbursed payments, the compensation received by Plaintiff and Class Members were not made "free and clear" under 29 C.F.R. § 531.35, and thus do not constitute a salary.  *See Ming-Hsiang Kao*, 12 Cal. App. 5th at 959; *see also*, *Takacs*, 444 F. Supp. 2d at 1108 (finding that a deficit owed to an employer because of diminished commissions made the employee's compensation conditional – not "free and clear" – and therefore not a salary).

88.     C&W misclassified Plaintiff and Class Members as exempt employees.

89.     C&W does not have a policy or practice of providing rest periods to California Class Action Members, and C&W has not paid employees premium pay for missed rest periods as required by California Labor Code § 226.7 and Wage Order No. 4.

90.     As a result of C&W's unlawful failure to provide rest periods to all California Class Action Members and C&W's failure to pay an hour of premium pay at the regular rate for each day a rest period was not provided, Plaintiff and California Class Action Members are entitled to recover one hour of pay at their regular rate of compensation for each workday that a rest period was not provided, plus interest, attorney's fees, and costs, as well as further relief as described below.

### FIFTH CAUSE OF ACTION
**Failure to Reimburse Business Expenses**
**[Cal. Labor Code § 2802, and Cal. Code Regs. tit. 8, § 11040, 11070]**

91.     Plaintiff, on behalf of herself and all California Class Action Members, re-alleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

768331.12

92.     California Labor Code § 2802 requires employers to indemnify an employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of the employee's duties.

93.     During all relevant times, C&W failed to indemnify Plaintiff and California Class Action Members for their expenses related to use of their personal cell phones for work purposes. Plaintiff and California Class Action Members are entitled to indemnification of these work-related expenses plus prejudgment interest pursuant to California Labor Code § 2802.

94.     Plaintiff, on behalf of herself and similarly situated California Class Action Members, requests relief for these violations and further relief as described below.

## SIXTH CAUSE OF ACTION
### Failure to Furnish Accurate Itemized Wage Statements
### [Cal. Labor Code §§ 226 and 226.3, and Cal. Code Regs. tit. 8 § 11040]

95.     Plaintiff, on behalf of herself and all California Class Action Members, re-alleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

96.     California Labor Code § 226 provides that every employer must furnish each employee with an itemized wage statement that shows the total numbers of hours worked each pay period, gross wages, net wages, all deductions, all applicable hourly rates of pay, the legal name and address of the employer, and other information.

97.     C&W failed to furnish Plaintiff and California Class Action Members itemized wage statements accurately showing, at a minimum, gross wages, total hours worked, net wages earned, and all applicable hourly rates in effect during the pay period as well as the number of hours corresponding to each hourly rate.

98.     During all relevant times, all California Class Action Members were injured by these failures because, among other things, they were confused about whether they were paid properly, and/or they were misinformed about how many total hours they worked during each pay period.

99.     California Labor Code § 226(e)(1) states that an employee suffering injury as a result of a knowing and intentional failure by an employer to provide accurate itemized wage statements is entitled to recover the greater of all actual damages suffered or fifty dollars ($50) for the initial

768331.12

violation and one hundred dollars ($100) for each subsequent violation, up to four thousand dollars ($4,000).  Pursuant to California Labor Code § 226(h), Plaintiff and California Class Action Members are entitled to injunctive relief to ensure C&W's compliance with California Labor Code § 226.

100.    Plaintiff and California Class Action Members are entitled to an award of costs and reasonable attorneys' fees under California Labor Code § 226(h), as well as further relief as described below.

**SEVENTH CAUSE OF ACTION**
**Unfair Competition Law Violations**
**[Cal. Business & Professions Code §§ 17200 *et seq.*]**

101.    Plaintiff, on behalf of herself and all California Class Action Members, re-alleges and reincorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

102.    California Business & Professions Code §§ 17200 *et seq.* prohibits unfair competition in the form of any unlawful, unfair, deceptive, or fraudulent business practices.

103.    C&W has committed unlawful, unfair, deceptive, and/or fraudulent acts as defined by California Business & Professions Code §17200.  C&W's unlawful, unfair, deceptive, and/or fraudulent business practices include, but are not limited to, failing to pay for all hours worked, failing to pay overtime wages, failing to provide mandated meal and rest periods, and failing to indemnify Appraisers for business expenses.

104.    As a result of such unlawful, unfair, and/or fraudulent business practices, C&W reaped ill-gotten benefits and illegal profits at the expense of Plaintiff and California Class Action Members.

105.    Plaintiff, on behalf of herself and similarly situated California Class Action Members, requests further relief as described below.

**EIGHTH CAUSE OF ACTION**
**Violation of the Private Attorney General Act of 2004 ("PAGA")**
**[Cal. Labor Code §§ 2698 *et seq.*]**

106.    Plaintiff, on behalf of herself and all other aggrieved employees, re-alleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

107.    Plaintiff is an "aggrieved employee" under PAGA, as she was employed by C&W

17

during the applicable statutory period and suffered one or more Labor Code violations.  As such, Plaintiff seeks to recover, on behalf of herself and all aggrieved employees, the civil penalties provided by PAGA, plus reasonable attorneys' fees and costs.

108.    Plaintiff seeks to recover the PAGA civil penalties through a representative action as permitted by PAGA and the California Supreme Court in *Arias v. Super. Ct.*, 46 Cal. 4th 969 (Cal. Ct. App. 2009).  Class certification of the PAGA claims is not required, but Plaintiff may seek certification of the PAGA claims.

109.    Plaintiff seeks to pursue remedies pursuant to PAGA for the following violations:

a.    For C&W's failure to pay California Appraisers overtime, Plaintiff seeks recovery of civil penalties as set forth in California Labor Code § 558.  For C&W's failure to provide California Appraisers with meal periods or rest periods, Plaintiff seeks civil penalties under California Labor Code § 558.

b.    For C&W's knowing and intentional failure to provide accurate wage statements, California Labor Code § 226.3 imposes a civil penalty, in addition to any other penalty provided by law, of two hundred fifty dollars ($250) per aggrieved employee for the first violation of California Labor Code § 226(a), and one thousand dollars ($1,000) per aggrieved employee for each subsequent violation.

c.    For C&W's failure to keep accurate records as required by California Labor Code § 1174(d), including records of California Class Action Members' overtime hours, driving time, off-site work, weekend hours, holiday hours, and meal periods, C&W is subject to a civil penalty of five hundred dollars ($500) under California Labor Code § 1174.5.  C&W is also liable for civil penalties under California Labor Code § 558.

d.    For C&W's failure to indemnify California Appraisers for all necessary business expenditures, C&W is liable for the amount civil penalties described in the paragraph below, pursuant to California Labor Code § 2802.

768331.12

e.     For C&W's willful failure to pay all wages to an employee who is discharged or quits, the employee's wages continue from the due date at the same rate paid as a penalty under California Labor Code § 203.  The penalty does not continue for more than thirty (30) days.  California Labor Code § 256 imposes a civil penalty in an amount not exceeding thirty (30) days' pay.

110.     California Labor Code § 2698 *et seq.* imposes a civil penalty of one hundred dollars ($100) per pay period, per aggrieved employee for the initial violation of Labor Code §§ 226.7, 510, 512, 558, 1194, and 2802.  For each subsequent violation, the penalty is two hundred dollars ($200) per aggrieved employee, per pay period.

111.     True and correct copies of the claim notices filed online with the California Labor and Workforce Development Agency ("LWDA"), LWDA Case Number LWDA-CM-543235-18, copies of which were sent via certified mail to Defendants, is attached as Exhibit 1, 2 and 3.  As of today's date, the LWDA has provided no notice to Plaintiff regarding its intention to investigate or not investigate Plaintiff's claims.

112.     Enforcement of statutory provisions to protect workers and to ensure proper and prompt payment of wages is a fundamental public interest.  Plaintiff's successful enforcement of important rights affecting the public interest will confer a significant benefit for the general public.  Private enforcement of these rights is necessary, as no public agency has pursued enforcement.

113.     As a result of the violations alleged, Plaintiff, an aggrieved employee, on behalf of herself and other aggrieved employees, seeks all relief available pursuant to California Labor Code § 2699, including all civil penalties, attorneys' fees, expenses, and costs.

**NINTH CAUSE OF ACTION**
**Failure to Pay All Wages Upon Termination**
**[Cal. Labor Code §§ 201, 202, 203, and 256]**

114.     Plaintiff, on behalf of herself and all others similarly situated, re-alleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

115.     California Labor Code § 201 provides that any discharged employee is entitled to all wages due at the time of discharge.

116.     California Labor Code § 202 provides that any employee who quits his or her employment is entitled to all wages due within seventy-two (72) hours of notice of his intention to quit, or at the time of quitting if the employee provided seventy-two (72) hours previous notice of his or her intent to quit.

117.     Where an employer willfully fails to pay discharged or quitting employees all wages due as required under the California Labor Code §§ 201 and 202, the employer is liable to such employees under California Labor Code § 203 for waiting time penalties in the amount of one (1) day's compensation at the employees' regular rate of pay for each day the wages are withheld, up to thirty (30) days.

118.     During all relevant times, Defendants knowingly and willfully violated California Labor Code §§ 201 and 202 by failing to pay Plaintiff and California class members who are no longer employed by Defendants all wages owed as alleged herein.  Defendants are therefore liable to Plaintiff and California class members who are no longer employed by Defendants for waiting time penalties as required by California Labor Code § 203.

119.     Plaintiff, on behalf of herself and similarly situated California members, also requests further relief as described below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class Members, respectfully requests this Court to grant relief against Defendants as follows:

A.     Certify this action as a class action pursuant to Rule 23 for the Class Members, and appoint Plaintiff as Class Representative, and their attorneys as Class Counsel;

B.     Designate this action as a collective action on behalf of the Collective Action Members and authorize issuance of notice pursuant to 29 U.S.C. § 216(b) to all Collective Action Members, apprising them of the pendency of this action and permitting them to timely assert FLSA claims in this action by filing individual consents to opt into this proceeding;

C.     Direct class notice to all California Class Action Members;

D.     Declare that Defendants misclassified all Class Members under the California Labor Code as exempt from overtime wages;

768331.12

1      E.      Declare that Defendants misclassified all Collective Action Members under the FLSA

2  as exempt from overtime wages;

3      F.      Award unpaid wages, including all overtime compensation and meal and rest period

4  premiums, due under California law and the FLSA, to Plaintiff, Class Members, and Collective Action

5  Members;

6      G.      Award damages for Defendants' failure to provide accurate itemized wage statements;

7      H.      Award statutory penalties for Defendants' failure to pay Plaintiff and Class Members all

8  wages due upon termination.

9      I.      Award damages and restitution for Defendants' failure to reimburse necessary business

10  expenses;

11      J.      Award civil penalties under California Labor Code § 2698 *et seq.* for violations of

12  Labor Code §§ 203, 226.7, 510, 512, 558, 1194, and 2802, as well as Wage Order 4;

13      K.      Award liquidated damages to Plaintiffs and Collective Action Members as a result of

14  C&W's willful failure to pay for all wages due as well as overtime compensation pursuant to the

15  FLSA;

16      L.      Award pre-judgment and post-judgment interest;

17      M.      Enjoin Defendants from violating California law;

18      N.      Award costs and expenses of this action;

19      O.      Award reasonable attorneys' fees; and

20      P.      Award such other relief as this Court deems just and proper.

## JURY TRIAL DEMANDED

22  Plaintiff demands a trial by jury on each and every cause of action so triable.

24  Dated:    October 11, 2019           Respectfully submitted,

25                          GOLDSTEIN, BORGEN, DARDARIAN & HO

26

                         */s/ Laura L. Ho*

27                         Laura L. Ho

28                         Attorneys for Plaintiff

Exhibit 1



**G B D H**

**Goldstein, Borgen,
Dardarian & Ho**

Shareholders
Linda M. Dardarian
Laura L. Ho

Of Counsel
Barry Goldstein
David Borgen
Morris J. Baller

June 4, 2018

**Private Attorneys General Act – Online Filing**

Attn: PAGA Administrator

     Re:    Labor Code Private Attorney General Notice Act

To Whom It May Concern:

     This firm represents the aggrieved employee Dimitri Dixon, individually and on behalf of all others similarly situated, who work or worked for Cushman & Wakefield Western, Inc., and/or its corporate affiliates (hereinafter and collectively, "C&W" or "Cushman & Wakefield"), as Appraisers. In that position, employees are tasked with, inter alia, appraising the value of real estate investments made by the firm across a range of assets, researching sales, listing, and rentals for properties, constructing financial models, researching property financial information, preparing appraisals for firm clients, and inspecting property. Ms. Dixon has been employed by C&W as an Appraiser since September 2007.

     C&W has violated several California Labor Code provisions ("Labor Code") in its employment of Ms. Dixon and similarly situated Appraisers and is therefore liable for civil penalties under Labor Code § 2698 *et seq.* We request that your agency investigate the claims alleged below against C&W. This letter is to provide notice of claims for penalties under the Private Attorneys General Act, as amended, Labor Code § 2699.3 ("PAGA") for violations of Labor Code §§ 226.7 (meal and rest periods), 510 (overtime), 512 (meal and rest periods), 558 (penalties and wages for failure to pay all overtime wages and failure to provide either meal periods or premium pay), 226 (wage statements), 1174 (employee payroll records), 2751 (form of commission contracts), as well as California Industrial Welfare Commission Wage Orders 4-2001, Cal. Code Regs. Tit. 8, § 11070 ("Wage Order"). Therefore, the aggrieved employees hereby invite the Labor and Workforce Development Agency to take any action it deems appropriate.

**C&W Misclassifies Appraisers as Exempt**

     Cushman & Wakefield, a global real estate services firm, classifies its Appraisers as exempt from overtime when those Appraisers should be classified as non-exempt. The firm assigns Appraisers to assess the value of individual properties or a portfolio of assets for clients. Appraisers in California perform the same functions as similarly situated employees nationally. These duties include researching comparable sales, listings, and rental information for properties, constructing discounted cash flows and other financial models, researching benchmark rates of return for various properties, assisting in the preparation of appraisals that will support client decision making, as well as inspecting the property and interviewing market stakeholders with

Senior Appraisers. Appraisers do not sell anything. Appraisers can work remotely, as Ms. Dixon did on several occasions.

Appraisers are compensated by C&W using a recoverable "draw" system. Each employee is required to sign a standard promissory note with C&W indicating that they agree to pay C&W a fixed sum on demand, or immediately at the end of the calendar year, which is equal to the amount they receive as compensation for their labor. Appraisers are then paid a "recoverable draw," periodically against this obligation, which is the sole basis of compensation. Total compensation is derived from the percentage of fees that C&W earns on projects that represents the "valuation [and] advisory assignments" it holds for which employees render services (less broker referral fees, travel costs, supervisory offers, and other miscellaneous costs, all adjusted by employee share if multiple Appraisers work on a project).

While employees are paid a minimum draw – which their employment contract states may not to be reduced "because of the quantity or quality of work" performed – the draw payments made each pay period "are loans to be repaid to C&W upon demand" under the terms of the promissory note. If the Appraiser's share of commissions and fees do not reimburse C&W for the advances, the employees must pay C&W from their own funds. Cushman & Wakefield retain the right, in their sole discretion, to modify the company-wide percentages of fees for certain future assignments by providing 14 days' notice to employees.

Cushman & Wakefield's draw compensation method does not qualify as a salary under the Labor Code. For employee pay to be considered a salary, and the employee exempt from overtime premiums, for example, it must be a fixed rate of pay that is two times the state minimum wage. In addition, unless inconsistent with or less protective than California law, courts generally apply the federal salary basis test which requires monetary payments made in the form of a salary be "free and clear" "meaning '[final] and [unconditional].'"

However, the total compensation paid to a C&W Appraiser may in fact be less than two times the state minimum wage if the Appraiser's commissions and fees fall below the amount sufficient to compensate C&W under the promissory note. In addition, because the Appraiser's total compensation is based on the recoverable draw system – and C&W retains the right to both demand full repayment of the total promissory note and/or change how they calculate the percentage of fees for future assignments – an employee is not guaranteed compensation that is both two times the state minimum wage and free and clear of obligations to repay.

And while the terms of the employee's compensation agreement indicate that the employee's wages will not be reduced because of the quantity or quality of their work, such a reduction in pay is possible, given that compensation is tied to the total valuation of assignments to which the employee renders her services. Moreover, such a compensation scheme creates a scenario where the employee's compensation is subject to the availability of work (e.g. sufficient value of C&W's portfolio of assets to appraise), a situation which contrasts with the position of the DLSE that a salaried employee's wages should not be reduced if they are ready, willing, and able to work. Indeed, willful deductions "made in contravention of the salary requirements" nullifies the employee's exempt status.

PAGA Administrator                          -3-                          June 4, 2018

Further, while Appraisers perform office work for C&W under general supervision in the performance of their duties, these duties are routine production tasks unrelated to the setting or execution of business policy. Appraisers conduct research using multiple methods and resources to find comparable properties and valuations to assess C&W assets, construct financial models, and identify the rates of return for various properties. In addition, appraisers assist clients as they prepare appraisals of various properties and, with Senior Appraisers, inspect properties and interview market stakeholders.

These tasks are unrelated to the setting of general business policy, conducting long or short-term planning, or negotiating property transactions, but are more accurately those duties which contribute to the production of services "that the enterprise exists to produce and market." Appraisers do not supervise other employees. They are not responsible for setting corporate strategy or directing property transactions. Appraisers only conduct site visits or meet with clients or stakeholders in the furtherance of their production-related duties to appraise assets for C&W. These routine and low-level tasks do not establish Appraisers – and specifically Ms. Dixon – as exempt administrative employees.

Therefore, because Appraisers are not compensated with a salary and do not perform administrative duties pursuant to Wage Order 4(1)(A)(2) and relevant federal law, they are not properly classified as exempt employees.

### Unlawful Failure to Pay All Overtime Wages

Cushman & Wakefield has violated and continues to violate Labor Code §§ 510 and 558 and Wage Order No. 4(2)(K), (3) because it fails to compensate Appraisers for all overtime wages. Appraisers, including Ms. Dixon, work over forty hours a week and/or eight hours a day for C&W.

Although C&W has knowledge that Appraisers work more than forty hours a week and/or eight hours a day, C&W fails to pay them overtime. Unpaid overtime is due at a rate of 1.5 times an Appraisers regular rate of pay for hours over forty in a week, eight hours in a day, or the first eight hours worked on the seventh consecutive workday in a work week, or 2 times an Appraisers regular rate of pay for hours over twelve in a day or those in excess of eight hours in a day on the seventh consecutive workday. The regular rate of pay includes all compensation, such as non-discretionary bonuses.

Because of its failure to pay all overtime wages, C&W has violated Labor Code §§ 510 and Wage Order 4, and is liable for civil penalties and unpaid wages pursuant to Labor Code §§ 558, 1194, and 2698 *et seq.*

### Unlawful Failure to Provide Meal and Rest Periods or to Provide Pay Premiums for Missed Rest and Meal Periods

Cushman & Wakefield violated and continues to violate Labor Code §§ 226.7 and 512 and Wage Orders No. 4(11)-(12) because it has failed to provide meal and rest periods and to pay premium compensation due its employees for missed meal and rest periods.

PAGA Administrator                          -4-                          June 4, 2018

Because C&W incorrectly classifies their Appraisers as exempt employees, they did not provide meal periods or rest periods.  In addition, C&W is aware that it does not provide meal and rest break periods to Appraisers.

As a result, C&W is liable for civil penalties and wages pursuant to Labor Code §§ 558 and 2698 *et seq.*

## Unlawful Failure to Provide Commission Contracts

Cushman & Wakefield's method of compensating Appraisers using commissions fails to satisfy Labor Code § 2751 because it does not give employees a signed copy of the commission contract, and does not obtain a signed receipt from each employee.

## Unlawful Failure to Furnish Compliant Wage Statements

Cushman & Wakefield has violated and continues to violate Labor Code § 226 and Wage Order 4(7) because it willfully fails to furnish wage statements to Appraisers that show all applicable hourly rates in effect during the pay period, the corresponding number of hours worked at each hourly rate by employees, and the correct corporate address.

Pay stubs from C&W do not list the actual hours worked; instead spaces on the pay stub where hours and rates would be listed are blank.  The pay stubs do not reflect the regular rate or the overtime rate.  In addition, on information and belief, the pay stubs provided to Ms. Dixon and similarly situated employees fail to list the correct employer address.  While the pay stubs list 1290 Avenue of the Americas, New York, NY 10104, Ms. Dixon's 2018 promissory note lists 18111 Von Karman Avenue, Suite 1000, Irvine, CA  92612[1] and C&W's corporate address in California, where Ms. Dixon works, is listed as 425 Market St., Suite 2300 San Francisco, CA 94105.  However, neither address is listed on her pay stub.

Because of these violations of Labor Code § 226(a), C&W is liable for civil penalties pursuant to Labor Code §§ 226.3 and 2698 *et seq.*

## Unlawful Failure to Maintain Employee Payroll Records

Cushman & Wakefield has violated Labor Code § 1174 and Wage Order 4(7) because it failed to keep payroll records showing total hours works, inter alia, by not showing overtime hours worked and meal periods taken.  Because of these violations of the Wage Orders and Labor Code § 1174, C&W is liable for civil penalties pursuant to Labor Code §§ 1174.5 and 2698 *et seq.*

---

[1] Ms. Dixon's 2017 promissory note lists 2020 Main St Ste 1000, Irvine, California.

PAGA Administrator                    -5-                    June 4, 2018

     The aggrieved employee on behalf of himself and others similarly situated, hereby invites the Labor and Workforce Development Agency to take any action it deems appropriate.

Sincerely,

Laura L. Ho

LLH/kbm

cc:    (via Certified Mail, Return Receipt Requested)
       Cushman & Wakefield Western, Inc.
       1290 Avenue of the Americas
       New York, NY 10104

       (via Certified Mail, Return Receipt Requested)
       C T Corporation System
       425 Market Street, Suite 2300
       San Francisco, CA 94105

       (via Certified Mail, Return Receipt Requested)
       Cushman & Wakefield Western, Inc.
       1 Maritime Plaza
       San Francisco, CA 94111-3412

       (via Certified Mail, Return Receipt Requested)
       Cushman & Wakefield Western, Inc.
       18111 Von Karman Avenue, Suite 1000
       Irvine, CA 92612



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE 681

Certified Mail Fee
$

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $
☐ Return Receipt (electronic)      $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery $

Postage
$

Total Postage and Fees
$

Sent To  Cushman & Wakefield Western, Inc.
Street and Apt. No., or PO Box No.  1 Maritime Plaza
City, State, ZIP+4®  San Francisco, CA  94111-3412

PS Form 3800, April 2015 PSN 7530-02-000-9047        See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE 681

Certified Mail Fee
$

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $
☐ Return Receipt (electronic)      $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery $

Postage
$

Total Postage and Fees
$

Sent To  Cushman & Wakefield Western, Inc.
Street and Apt. No., or PO Box No.  1290 avenue of the Americas
City, State, ZIP+4®  New York, NY  10104

PS Form 3800, April 2015 PSN 7530-02-000-9047        See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE 681

Certified Mail Fee
$

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $
☐ Return Receipt (electronic)      $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery $

Postage
$

Total Postage and Fees
$

Sent To  CT Corporation System
Street and Apt. No., or PO Box No.  425 Market St., Ste. 2300
City, State, ZIP+4®  San Francisco, CA  94104

PS Form 3800, April 2015 PSN 7530-02-000-9047        See Reverse for Instructions

---



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE 681

Certified Mail Fee
$ 3.45

Extra Services & Fees (check box, add fee as appropriate)
☑ Return Receipt (hardcopy)        $ 2.75
☐ Return Receipt (electronic)      $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery $

Postage
$ 0.47

Total Postage and Fees
$ 6.67

Sent To  Cushman & Wakefield Western, Inc.
Street and Apt. No., or PO Box No.  1811 Von Karman Ave., Ste. 1000
City, State, ZIP+4®  Irvine, CA  92612

PS Form 3800, April 2015 PSN 7530-02-000-9047        See Reverse for Instructions

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

Goldstein, Borgen, Dardarian & Ho — 681
300 Lakeside Drive, Suite 1000
Oakland, CA 94612

---

UNITED STATES POSTAL SERVICE

NEW YORK
NY 100
08 JUN '18
PM 12 L

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

Goldstein, Borgen, Dardarian & Ho — 681
300 Lakeside Drive, Suite 1000
Oakland, CA 94612

2-353650

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Cushman & Wakefield, Inc.
1811 Von Karman Ave.,
        Ste. 1000

Irvine, CA 92612

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail®    ☐ Priority Mail Express™
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7016 2710 0000 9295 5008

PS Form 3811, July 2013          Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Cushman & Wakefield
        Western, Inc.
1290 Avenue of the Americas
New York, NY 10104

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
Richard Rosen N/A

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail®    ☐ Priority Mail Express™
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7016 2710 0000 5613 6603

PS Form 3811, July 2013          Domestic Return Receipt

ALERT: AS OF APRIL 30, USPS.COM NO LONGER SUPPORTS OUTDATED BROWSERS. TO CO…

# USPS Tracking®

FAQs  ⟩  (http://faq.usps.com/?articleId=220900)

## Track Another Package  +

**Tracking Number:** 70162710000056136610

Remove ✕

Your item was delivered to the front desk or reception area at 1:07 pm on June 7, 2018 in SAN FRANCISCO, CA 94105.

## ✅ Delivered

June 7, 2018 at 1:07 pm
Delivered, Front Desk/Reception
SAN FRANCISCO, CA 94105

**Get Updates** ∨

| Text & Email Updates | ∨ |
|---|---|
| Tracking History | ∨ |
| Product Information | ∨ |

See Less ∧

# Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

**FAQs (http://faq.usps.com/?articleId=220900)**

**The easiest tracking number is the one you don't have to know.**

With Informed Delivery®, you never have to type in another tracking number. Sign up to:

- See images* of incoming mail.

- Automatically track the packages you're expecting.

- Set up email and text alerts so you don't need to enter tracking numbers.

- Enter USPS Delivery Instructions™ for your mail carrier.

**Sign Up**

**(https://reg.usps.com/entreg/RegistrationAction_input?**

*NOTE: Black and white (grayscale) images show the outside, front of letter-sized envelopes and
mailpieces that are processed through USPS automated equipment. **app=UspsTools&appURL=https%3A%2F%2Ftools.usps.com%2Fgo**

Exhibit 2



**G B D H**

**Goldstein, Borgen,
Dardarian & Ho**

Shareholders
Linda M. Dardarian
Laura L. Ho

Of Counsel
Barry Goldstein
David Borgen
Morris J. Baller

August 14, 2018

<u>**Private Attorneys General Act – Online Filing**</u>

Attn: PAGA Administrator

Re:      Labor Code Private Attorney General Notice Act – Additional Violations

To Whom It May Concern:

This firm represents the aggrieved employee Dimitri Dixon, individually and on behalf of all others similarly situated, who work or worked for Cushman and Wakefield Western, Inc., and/or its corporate affiliates (hereinafter and collectively, "C&W"), as Appraisers.[1]

We have filed a notice to the Labor Workforce Development Agency on June 4, 2018 (LWDA Case Number LWDA-CM-543235-18) alleging several violations of the California Labor Code, including §§ 226.7 (meal and rest periods), 510 (overtime), 512 (meal and rest periods), 558 (penalties and wages for failure to pay all overtime wages and failure to provide either meal periods or premium pay), 226 (wage statements), 1174 (employee payroll records), as well as California Industrial Welfare Commission Wage Orders 4-2001, Cal. Code Regs. Tit. 8, § 11040 ("Wage Order"). The prior letter discussed the factual bases for those violations, which we re-allege and incorporate herein.

Ms. Dixon now writes to add additional violations of the California Labor Code by C&W, specifically Labor Code § 2802 (failure to reimburse business expenses).

<u>**C&W Failed to Reimburse Employees for All Business Expenses**</u>

C&W requires Appraisers to purchase cellular phones for work-related usage without reimbursing them for the original cost of the device or the cost of monthly payments to maintain service. Because employers are required to reimburse employees for "all necessary expenditures . . . incurred by the employee in direct consequence of the discharge of his or her duties," C&W has violated and continues to violate California Labor Code § 2802.

Ms. Dixon alleges that in or around 2010 or 2011, she was required to purchase a cell phone for work-related purposes. The regional manager of her office, Ryan McCafferty, expressed frustration that Ms. Dixon did not have a cell phone he could call during work hours when Ms. Dixon was away from the office. Mr. McCafferty expressed this frustration to Ms. Dixon's direct supervisor, Lars Platt, and to other members of Ms. Dixon's office. To remedy this concern, Ms. Dixon purchased a cell phone. Ms. Dixon has used the cell phone to conduct

---

[1] Inclusive of those employees who worked as appraisers with titles such as Appraiser, Junior Appraiser, Senior Appraiser, Appraiser Trainee, Associate Director, and Director.

716755.1

Attn. PAGA Administrator                    -2-                    August 14, 2018

work-related calls, and has continued to make monthly payments to maintain her cell phone service.

Importantly, an employer is required "to reimburse an employee for the reasonable expense of the mandatory use of a personal cell phone." *Cochran v. Schwan's Home Service, Inc.*, 228 Cal.App.4th 1137, 1144 (2014). Moreover, "to be in compliance with *section 2802*, the employer must pay some reasonable percentage of the employee's cell phone bill." *Id.* Therefore, because Ms. Dixon was required to purchase a personal cell phone for work-related purposes, and has never been reimbursed for those expenses, she is entitled to recover a "reasonable percentage" of the phone bill under § 2802.

Ms. Dixon and the aggrieved employees hereby invite the Labor and Workforce Development Agency to take any action it deems appropriate.

Very truly yours,

Laura L. Ho

LLH/A

cc:      (via Certified Mail, Return Receipt Requested)
         Cushman & Wakefield Western, Inc.
         1290 Avenue of the Americas
         New York, NY 10104

         (via Certified Mail, Return Receipt Requested)
         C T Corporation System
         425 Market St., Suite 2300
         San Francisco, CA 94105

         (via Certified Mail, Return Receipt Requested)
         Cushman & Wakefield Western, Inc.
         18111 Von Karman Avenue, Suite 1000
         Irvine, CA 92612

716755.1

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$ 3.45

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)          $ 2.75
☐ Return Receipt (electronic)        $ _____
☐ Certified Mail Restricted Delivery $ _____
☐ Adult Signature Required           $ _____
☐ Adult Signature Restricted Delivery $ _____

Postage
$ 0.47

Total Postage and Fees
$ 6.67

Sent To *C.T. Corporation System*
Street and Apt. No., or PO Box No. *425 Market St., Ste. 2300*
City, State, ZIP+4® *San Francisco, CA 94105*

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$ 3.45

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)          $ 2.75
☐ Return Receipt (electronic)        $ _____
☐ Certified Mail Restricted Delivery $ _____
☐ Adult Signature Required           $ _____
☐ Adult Signature Restricted Delivery $ _____

Postage
$ 0.47

Total Postage and Fees
$ 6.67

Sent To *Cushman & Wakefield Western, Inc.*
Street and Apt. No., or PO Box No. *18111 Von Karman Ave., Ste. 1000*
City, State, ZIP+4® *Irvine, CA 92612*

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$ 3.45

Extra Services & Fees *(check box, add fee as appropriate)*
☑ Return Receipt (hardcopy)          $ 2.75
☐ Return Receipt (electronic)        $ _____
☐ Certified Mail Restricted Delivery $ _____
☐ Adult Signature Required           $ _____
☐ Adult Signature Restricted Delivery $ _____

Postage
$ 0.47

Total Postage and Fees
$ 6.67

Sent To *Cushman & Wakefield Western, Inc.*
Street and Apt. No., or PO Box No. *1290 Avenue of the Americas*
City, State, ZIP+4® *New York, NY 10104*

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

Exhibit 3



Shareholders
Linda M. Dardarian
Laura L. Ho
James Kan

**Goldstein, Borgen,
Dardarian & Ho** .

Of Counsel
Barry Goldstein
David Borgen
Morris J. Baller

August 16, 2019

**Private Attorneys General Act – Online Filing**

Attn: PAGA Administrator

    Re:    Labor Code Private Attorney General Notice Act – Additional Violations

To Whom It May Concern:

    This firm represents the aggrieved former employee Dimitri Dixon, individually and on behalf of all others similarly situated, who work or worked for Cushman and Wakefield Western, Inc., and/or its corporate affiliates (hereinafter and collectively, "C&W"), as Appraisers.[1]

    We filed a notice to the Labor Workforce Development Agency on June 4, 2018 (LWDA Case Number LWDA-CM-543235-18) alleging several violations of the California Labor Code, including §§ 226.7 (meal and rest periods), 510 (overtime), 512 (meal and rest periods), 558 (penalties and wages for failure to pay all overtime wages and failure to provide either meal periods or premium pay), 226 (wage statements), 1174 (employee payroll records), as well as California Industrial Welfare Commission Wage Orders 4-2001, Cal. Code Regs. Tit. 8, § 11040 ("Wage Order"). We filed a notice to the LWDA on August 14, 2018 to add additional violations of California Labor Code § 2802 (failure to reimburse employees for all business expenses). The prior letters discussed the factual bases for those violations, which we re-allege and incorporate herein.

    Ms. Dixon now writes to add additional violations of the California Labor Code by C&W, specifically Labor Code § 203 (failure to pay all wages due upon termination).

**C&W Failed to Pay Wages Due Upon Termination**

    C & W has violated California Labor Code §§ 201 and 202 by willfully failing to pay all compensation due and owing to all former Appraisers at the time their employment was terminated, including failure to pay overtime wages.

    Pursuant to §§ 203 and 256 of the Labor Code, Plaintiff and similarly situated individuals are now also entitled to recover up to thirty days of wages due to Defendant's "willful" failure to comply with the statutory requirements of sections 201 and 202. Additionally, because C&W

---

[1] Inclusive of those employees who worked as appraisers with titles such as Appraiser, Junior Appraiser, Senior Appraiser, Appraiser Trainee, Associate Director, and Director.

PAGA Administrator                          -2-                          August 16, 2019

violated California Labor Code §§ 201, 202 and 203, C&W is liable for civil penalties pursuant to California Labor Code §§ 203, 256, and 2698 *et seq.*

Ms. Dixon alleges that on April 15, 2019, she was notified of her termination from C&W, effective December 10, 2018.  C&W failed to pay Ms. Dixon all of her wages due upon her termination.  Additionally, after Ms. Dixon's employment ended, C&W demanded repayment of her draw amounts, a total of $15,632.54.  Therefore, Ms. Dixon is entitled to recover up to thirty days of wages and additional civil penalties.

Ms. Dixon and the aggrieved employees hereby invite the Labor and Workforce Development Agency to take any action it deems appropriate.

Sincerely,

Laura L. Ho

LLH/kbm

cc:      (via Certified Mail, Return Receipt Requested)
         Cushman & Wakefield Western, Inc.
         1290 Avenue of the Americas
         New York, NY 10104

         (via Certified Mail, Return Receipt Requested)
         C T Corporation System
         425 Market Street, Suite 2300
         San Francisco, CA 94105

         (via Certified Mail, Return Receipt Requested)
         Cushman & Wakefield Western, Inc.
         18111 Von Karman Avenue, Suite 1000
         Irvine, CA 92612



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com*®.

Certified Mail Fee
$
Extra Services & Fees *(check box, add fee as appropriate)*
☑ Return Receipt (hardcopy)        $ 2.80
☐ Return Receipt (electronic)      $
☒ Certified Mail Restricted Delivery $ 3.50
☐ Adult Signature Required          $
☐ Adult Signature Restricted Delivery $
Postage
$ .50
Total Postage and Fees
$ 6.80
Sent To   C T Corporation System
Street and Apt. No., or PO Box No.  818 West Seventh St. Suite 930
City, State, ZIP+4®   Los Angeles, CA 90017

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

7016 2710 0000 9295 7149



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com*®.

Certified Mail Fee   3.50
$
Extra Services & Fees *(check box, add fee as appropriate)*
☑ Return Receipt (hardcopy)        $ 2.80
☐ Return Receipt (electronic)      $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required          $
☐ Adult Signature Restricted Delivery $
Postage
$ .50
Total Postage and Fees
$ 6.80
Sent To   Cushman & Wakefield Western, Inc.
Street and Apt. No., or PO Box No.  1290 Avenue of the Americas
City, State, ZIP+4®   New York, NY 10104

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

7016 2710 0000 9295 7118



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com*®.

Certified Mail Fee   3.50
$
Extra Services & Fees *(check box, add fee as appropriate)*
☑ Return Receipt (hardcopy)        $ 2.80
☐ Return Receipt (electronic)      $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required          $
☐ Adult Signature Restricted Delivery $
Postage
$ .50
Total Postage and Fees
$ 6.80
Sent To   Cushman & Wakefield Western, Inc.
Street and Apt. No., or PO Box No.  18111 Von Karman Avenue, Suite 1000
City, State, ZIP+4®   Irvine, CA 92612

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

7016 2710 0000 9295 7132

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com*®.

Certified Mail Fee   3.50
$
Extra Services & Fees *(check box, add fee as appropriate)*
☑ Return Receipt (hardcopy)        $ 2.80
☐ Return Receipt (electronic)      $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required          $
☐ Adult Signature Restricted Delivery $
Postage
$ .50
Total Postage and Fees
$ 6.80
Sent To   C T Corporation System
Street and Apt. No., or PO Box No.  425 Market Street, Suite 2300
City, State, ZIP+4®   San Francisco, CA 94105

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

7016 2710 0000 9295 7125

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

CT Corporation System
818 West Seventh Street
Suite 930
Los Angeles, CA 90017

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
9590 9402 4578 8278 3061 09

2. Article Number (Transfer from service label)

7016 2710 0000 9295 7149

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
CT CORPORATION SYSTEM
X 818 West Seventh Street     ☐ Agent   ☐ Addressee

B. Received by (Printed Name)      C. Date of Delivery
Los Angeles, CA 90017  SEP 03 2019

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Cushman & Wakefield Western, Inc.
1290 Avenue of the Americas
New York, NY 10104

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
9590 9402 4578 8278 3060 86

2. Article Number (Transfer from service label)

7016 2710 0000 9295 7118

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                ☐ Agent   ☐ Addressee

B. Received by (Printed Name)      C. Date of Delivery
                                   8-20-19

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Cushman & Wakefield Western, Inc.
18111 Von Korman Avenue, Suite 1000
Irvine, CA 92612

9590 9402 4578 8278 3060 31

2. Article Number (Transfer from service label)

7016 2710 0000 9295 7132

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X  Lopez
☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
Alyssa Lopez

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053   Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

C T Corporation System
425 Market Street, Suite 2300
San Francisco, CA 94105

9590 9402 4578 8278 3060 48

2. Article Number (Transfer from service label)

7016 2710 0000 9295 7125

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053   Domestic Return Receipt

