1
Laura L. Ho (CA SBN 173179)
lho@gbdhlegal.com
2
Ginger Grimes (SBN 307168)
ggrimes@gbdhlegal.com
3
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
4
Oakland, CA 94612
Tel:  (510) 763-9800
5
Fax:  (510) 835-1417
6
*Attorneys for Plaintiffs. Proposed Class*
*and Collective Members, and Aggrieved Employees*
7
*[Additional counsel on following page]*
8

9
UNITED STATES DISTRICT COURT
10
NORTHERN DISTRICT OF CALIFORNIA
11
DIMITRI DIXON and RYAN SELTZ,         Case No. 3:18-cv-05813-JSC
12
individually, and on behalf of all others similarly
situated,                                          **SECOND AMENDED COMPLAINT**
13
        Plaintiffs,                                   1.  **Violations of the Fair Labor Standards Act**
14
vs.                                                   2.  **Violations of California Overtime Law**
15
CUSHMAN & WAKEFIELD WESTERN, INC.,;    3.  **Violations of California Meal Period Law**
16
CUSHMAN & WAKEFIELD, INC., and
CUSHMAN & WAKEFIELD, OF                 4.  **Violations of California Rest Period Law**
17
WASHINGTON, DC, INC., and DOES 1-50,
inclusive,                                           5.  **Violations of California Business Expenses Reimbursement Law**
18
        Defendants.                                   6.  **Violations of California Accurate Itemized Wage Statements Law**
19
                                                      7.  **Violation of California Unfair Competition Law**
20
                                                      8.  **Violation of the Private Attorney General Act of 2004 ("PAGA")**
21
22
                                                      9.  **Violation of California Final Pay Law**
23
                                                      **JURY TRIAL DEMANDED**
24
25
26
27
28

829636.11

Justin M. Swartz (admitted *pro hac vice*)
jms@outtengolden.com
Deirdre Aaron (admitted *pro hac vice*)
daaron@outtengolden.com
OUTTEN & GOLDEN, LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Tel:  (212) 245-1000
Fax:  (646) 509-2060

Jahan C. Sagafi (SBN 227887)
jsagafi@outtengolden.com
Molly J. Frandsen (SBN 320094)
mfrandsen@outtengolden.com
OUTTEN & GOLDEN, LLP
One California Street, 12th Floor
San Francisco, CA 94111
Tel:  (415) 638-8828
Fax:  (415) 638-8810

Paolo Meireles (*pro hac vice* application forthcoming)
pmeireles@shavitzlaw.com
Shavitz Law Group, P.A.
951 Yamato Road, Suite 285
Boca Raton, FL 33431
Tel:  (561) 447-8888

*Attorneys for Plaintiffs. Proposed Class*
*and Collective Members, and Aggrieved Employees*

829636.11

1    Plaintiff Dimitri Dixon and Plaintiff Ryan Seltz ("Plaintiffs"), individually and on behalf of all

2    others similarly situated, allege as follows:

3                                                **INTRODUCTION**

4    1.    Plaintiff Dimitri Dixon brings this action individually, and in a representative capacity

5    on behalf of all other similarly situated individuals (members of the California Class and Dixon

6    Collective), against Defendants Cushman and Wakefield Western, Inc. ("C&W Western") and

7    Cushman & Wakefield, Inc. ("C&W") for violations of several California Labor Code provisions

8    ("Labor Code"), including Labor Code §§ 203, 226.7, 510, 512, 558, 226, 1174, and California

9    Industrial Welfare Commission Wage Orders 4-2001, Cal. Code Regs. Tit. 8, § 11040; and the Fair

10   Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*

11   2.    Plaintiff Ryan Seltz brings this action individually and in a representative capacity on

12   behalf of all similarly situated individuals (members of the Seltz Collective) against Defendants C&W

13   and Cushman and Wakefield, of Washington, DC, Inc. ("C&W DC") for violations of the FLSA.

14   3.    Plaintiffs, Class Members, and Collective Action Members were employed as

15   Appraisers (including as Junior Appraisers and Senior Appraisers) by one or more Defendants and

16   were denied the benefits and protections required by the FLSA, Labor Code, and other statutes and

17   regulations applicable to non-exempt employees in the State of California.

18   4.    Plaintiffs allege that Defendants **failed to**:

19         a.    Properly classify employees as non-exempt under California law and the FLSA;

20         b.    Pay Plaintiff Dixon and Class Members all overtime wages for hours worked in

21   excess of eight (8) hours a day and to pay Plaintiffs, Class Members, and Collective Action Members

22   all overtime wages for hours worked in excess of forty (40) hours a week;

23         c.    Provide Plaintiff Dixon and Class Members mandated meal periods;

24         d.    Provide Plaintiff Dixon and Class Members mandated rest periods;

25         e.    Reimburse Plaintiff Dixon and Class Members for all necessary expenditures

26   that they incurred in direct consequence of the discharge of work duties including, but not limited to,

27   the cost of cell phone usage required for work-related purposes;

28

829636.11

f.      Keep required payroll records that accurately show the total hours Plaintiff Dixon and Class Members worked, as well as the wages that should have been paid;

g.      Furnish Plaintiff Dixon and Class Members with accurate wage statements;

h.      Comply with the Unfair Competition Law ("UCL"), California Business & Professions Code § 17200 *et seq*.; and

i.      Comply with the Private Attorneys General Act of 2004 ("PAGA"), codified as California Labor Code § 2698 *et seq*.

j.      Pay Plaintiff Dixon and Class Members All Wages Due Upon Termination.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1337 and diversity jurisdiction under 28 U.S.C. § 1332.

6.      This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

7.      This Court has supplemental jurisdiction over the California claims pursuant to 28 U.S.C. § 1367 because they are so closely related to the claims under the FLSA that they form part of the same case or controversy under Article III of the United States Constitution.

8.      Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391.

9.      Plaintiff Dixon fulfilled the administrative prerequisites for filing suit under Labor Code § 2699.3(a).  Specifically, on June 4, 2018, Plaintiff Dixon submitted to the California Labor and Workforce Agency ("LWDA") via its website a notice describing the allegations set forth in this Complaint.  A true and correct copy of the Notice (LWDA Case Number LWDA-CM-543235-18) is attached as Exhibit 1.  On the same day, Plaintiff Dixon served a copy of the Notice on Defendant C&W Western. via certified mail, as shown in Exhibit 1.  As of sixty-five (65) calendar days after submission of the Notice to the LWDA, the LWDA had provided no notice to Plaintiff Dixon regarding its intention to investigate (or not investigate) Plaintiff Dixon's claims.  Plaintiff Dixon timely submitted a filing fee of $75 to the LWDA.  On August 14, 2018, Plaintiff Dixon submitted to the LWDA a notice describing additional allegations set forth in this Complaint.  A true and correct copy of the Notice is attached as Exhibit 2.  On the same day, Plaintiff Dixon served a copy of the

829636.11

1  Notice on Defendant C&W Western via certified mail, as shown in Exhibit 2. As of sixty-five (65)

2  calendar days after submission of the Notice to the LWDA, the LWDA has provided no notice to

3  Plaintiff Dixon regarding its intention to investigate (or not investigate) Plaintiff Dixon's claims.

4  Plaintiff Dixon timely submitted a filing fee of $75 to the LWDA.  On August 16, 2019, Plaintiff

5  Dixon submitted to the LWDA a notice describing additional allegations set forth in this Complaint.  A

6  true and correct copy of the Notice is attached as Exhibit 3.  On the same day, Plaintiff Dixon served a

7  copy of the Notice on Defendant C&W Western via certified mail, as shown in Exhibit 3. As of sixty-

8  five (65) calendar days after submission of the Notice to the LWDA, the LWDA has provided no

9  notice to Plaintiff Dixon regarding its intention to investigate (or not investigate) Plaintiff Dixon's

10  claims.  Plaintiff Dixon timely submitted a filing fee of $75 to the LWDA.

11  **PARTIES**

12        10.      Plaintiff Dimitri Dixon is an adult individual who resides in Tustin, CA.  Plaintiff is a

13  "person" under California Business & Professions Code § 17201 and California Labor Code § 18.

14  Plaintiff was employed as an Appraiser Trainee[1] by C&W and worked in that capacity from September

15  2007 to December 10, 2018.

16        11.      Plaintiff Ryan Seltz is an adult individual who resided in Washington, D.C. during his

17  employment for C&W as an Appraiser from approximately May 2017 through October 2017.

18        12.      Defendant C&W is a commercial real estate services company.  C&W is the parent

19  corporation of Defendant C&W Western, Defendant C&W DC., and related corporate entities in states

20  across the country, and together they employ Appraisers (including Junior Appraisers and Senior

21  Appraisers) like Plaintiffs.  Upon information and belief, these entities have offices throughout the

22  country, including in Georgia, New York, Ohio, Illinois, Washington D.C., and Washington state, as

23  well as non-U.S. offices in locations such as London and Singapore.  Defendants act as a single

24  integrated enterprise that employed and/or jointly employed Plaintiffs and those similarly situated

25  during all relevant times.

26

27

28

---

[1] Ms. Dixon's official job title was "Associate Director," though she was referred to and identified as an "Appraiser Trainee" at all relevant times.

1

## FACTUAL ALLEGATIONS

2        13.     Plaintiff Dixon was an employee of C&W and C&W Western, a commercial real estate

3    services company.  Plaintiff Dixon began working as an Appraiser Trainee on September 17, 2007.  As

4    an Appraiser Trainee, Plaintiff Dixon's duties included appraising the value of real estate investments,

5    researching property sales, listings, and rentals, constructing financial models, researching financial

6    information, preparing appraisals for firm clients, and inspecting property.

7        14.     Plaintiff Dixon worked across several practice areas within C&W and C&W Western's

8    Valuation Advisory Group, and began working as an Appraiser Trainee in the Senior Housing practice

9    area, supervised by Ryan McCafferty.  Upon information and belief, around June 2013, Plaintiff Dixon

10   transferred to the Auto Specialty practice area, supervised by Chris Kelsey.  Plaintiff Dixon most

11   recently worked within C&W and C&W Western's Auto Specialty practice area.

12       15.     Throughout her tenure at C&W and C&W Western, Plaintiff Dixon actively sought a

13   state-certified appraisal license.  Plaintiff Dixon held an Appraiser Trainee license.  Plaintiff Dixon's

14   licensure status affected the number of C&W and C&W Western projects that she could complete.

15       16.     Plaintiff Dixon was compensated through a "recoverable draw" scheme.  At the

16   beginning of each year of her employment, Plaintiff Dixon was required to sign a standard promissory

17   note with C&W and C&W Western, where she agreed to pay C&W and C&W Western the balance of

18   a fixed sum of money equal to her annual compensation.  Each employee then receives a bi-monthly

19   draw against this obligation, which is the sole basis of compensation.  Such "draw" payments

20   constitute advancements to Plaintiff Dixon, which Plaintiff owes to C&W and C&W Western in the

21   form of debt.  The promissory note allows C&W and C&W Western, among other things, to recoup the

22   entire balance of the advanced sum at any time, including after the employee-employer relationship

23   terminates.

24       17.     Appraisers work on assigned projects that generate fees.  Such fees are intended, in part,

25   to cover their bi-monthly draw payments and satisfy outstanding debt obligations.  Employees earn

26   fees through a complicated fee arrangement, which is stipulated in their employment contracts.  A

27   portion of the fees generated by employees – including Plaintiff Dixon – are set aside for C&W and

28   C&W Western to account for and offset various accrued expenses and costs, including referral fees,

supervisory offsets and other miscellaneous costs.  Upon information and belief, beginning around June 2013, fees earned by Plaintiff Dixon for completed projects were significantly reduced due to "supervisory offsets."

18.     Upon information and belief, C&W and C&W Western calculates the total fee amount generated by Appraisers (minus any deductions made pursuant to the employment contract), as well as the total amount of draw payments made that period; the draw payments are then deducted from the fees collected.  Any positive amount is paid to the employee.  Any negative amount is carried forward as debt owed to C&W and C&W Western, which must be settled by appraisers.

19.     Plaintiff Dixon's employment contract states that she may not receive less than the draw payments.  The employment contract further states that the draw payments "are loans to be repaid to C&W upon demand."  The employment contract states that if an Appraiser's fee share does not sufficiently reimburse C&W and C&W Western for their advanced draw payments, employees are personally liable to C&W and/or C&W Western.

20.     Plaintiff Dixon has consistently carried forward a deficit while working for C&W.  Plaintiff Dixon worked on C&W and C&W Western projects with the goal of settling mounting deficits resulting from the combined draw payments and promissory note obligations.

21.     In 2017, C&W and/or and C&W Western held a promissory note against Plaintiff Dixon for $54,000, which was equal to the total bi-monthly draw payments received throughout the year.

22.     Plaintiff Dixon repeatedly alerted her supervisors that her deficit was beginning to grow and that the fee split with her supervisor precluded Plaintiff Dixon from settling the outstanding debt obligations.  Plaintiff Dixon made two suggestions as ways to settle her obligations: (1) C&W and/or C&W Western should increase her fee share and/or (2) she should be given additional projects to earn more fees.  Upon information and belief, as of December 2017, Plaintiff Dixon was only receiving fifty (50) percent of the total fees generated, and otherwise continued receiving fewer and fewer projects.

23.     Upon information and belief, around December 2017, after Plaintiff Dixon discussed her decreasing project volume with Lars Platt, a regional leader at C&W and/or C&W Western, Mr.

1  Platt informed Plaintiff Dixon that there simply was not enough business to accommodate Plaintiff

2  Dixon's request.

3     24.    Upon information and belief, around December 2017, Michele Kauffman, a C&W

4  and/or C&W Western area leader, and another one of Plaintiff Dixon's supervisors, told Plaintiff

5  Dixon that she should continue to work on obtaining her appraiser license as a way to position herself

6  for more projects at C&W and C&W Western.

7     25.    On May 16, 2018, Plaintiff Dixon received an email stating that, effective June 4, 2018,

8  Plaintiff Dixon's recoverable draw compensation would be reduced from $54,000 to $45,760, as

9  Plaintiff Dixon had not performed enough work to settle the deficit owed to Defendants.

10    26.    After a period of receiving few opportunities to conduct appraisals in late 2017 and

11 early 2018, Plaintiff Dixon was told that she owed more than $28,000 to C&W and/or C&W Western

12 and that Plaintiff Dixon needed to figure out a way to reduce that figure.

13    27.    Upon information and belief, on or around May 17, 2018, Plaintiff Dixon discussed

14 with Ms. Kauffman the low number of projects she was assigned and her growing draw deficit.  Ms.

15 Kauffman told Plaintiff that C&W and C&W Western did not have work that she could perform,

16 explaining that only a handful of low-level assignments – with correspondingly lower fees – were

17 available.  Additionally, Ms. Kauffman informed Plaintiff Dixon that such low-value assignments were

18 not projects that C&W, as a firm, typically took on.

19    28.    Plaintiff Dixon's draw payments were stopped effective June 4, 2018.

20    29.    Plaintiff Dixon's resulting stress, growing deficit, and feeling of helplessness caused

21 Plaintiff Dixon severe anxiety, chest pains, and depression.  Because of these symptoms, Plaintiff

22 Dixon took medical leave.

23    30.    Upon information and belief, around 2010, Plaintiff Dixon's supervisor, Ryan

24 McCafferty, complained that Plaintiff Dixon did not possess a cell phone for work-related usage.

25 Based on McCafferty's complaint, Plaintiff Dixon obtained a cell phone, which she used for work-

26 related purposes.  At no point did C&W and/or C&W Western provide cell phones to Plaintiff Dixon

27 or similarly situated appraisers.  C&W and C&W Western have never compensated Plaintiff Dixon for

28 expenses related to the continued use of her cell phone.

31.     On April 15, 2019, Plaintiff Dixon was notified of her termination from C&W and C&W Western, effective December 10, 2018.  Defendants alleged that Plaintiff owed a draw balance of $15,632.54 and demanded repayment.

32.     During the applicable time period, Plaintiff Dixon and Class Members regularly and consistently worked more than eight (8) hours in a workday and/or more than forty (40) hours in a workweek.  Nonetheless, Defendants C&W and C&W Western failed to pay Plaintiff Dixon and Class Members for all hours worked in excess of eight (8) hours in a workday and/or in excess of forty (40) hours in a workweek.

33.     Defendants C&W and C&W Western failed to provide Plaintiff Dixon and Class Members with meal and rest periods in accordance with California law.

34.     Defendants C&W and C&W Western failed to keep accurate payroll records showing the daily hours worked by Plaintiff Dixon and Class Members, as well as wages they should have been paid.

35.     Defendants C&W and C&W Western failed to furnish Plaintiff Dixon and Class Members with accurate itemized wage statements in accordance with California law.

36.     Defendants C&W and C&W Western misclassified Plaintiff Dixon and Class Members as "exempt" employees.

37.     Defendants C&W and C&W Western failed to pay Plaintiff Dixon and Class Members all wages due upon termination.

38.     C&W and C&W Western employed Plaintiff Dixon and Class Members during PAGA's statutory period.

39.     Plaintiff Seltz worked for C&W and C&W DC as an Appraiser in Washington, D.C. from approximately May 2017 through October 2017.  As an Appraiser, Plaintiff Seltz regularly worked more than 40 hours per week and frequently worked approximately 55 hours per week, without being paid overtime.

**COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA**

40.     Plaintiffs, on behalf of themselves and all Collective Action Members, re-allege and incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

41.     Pursuant to 29 U.S.C. § 216, Plaintiffs seek to prosecute the FLSA claims as a collective action on behalf of two groups of Appraisers.  Plaintiff Dixon represents the following collective of Appraisers:

> All persons employed by CUSHMAN AND WAKEFIELD WESTERN, INC. and CUSHMAN AND WAKEFIELD, INC., as Appraisers (including and Senior Appraisers) assigned to at least one Cushman & Wakefield office in any state between October 7, 2017 through May 31, 2021 ("Dixon Collective").

42.     Plaintiff Seltz represents the following collective of Junior Appraisers:

> All persons employed by CUSHMAN AND WAKEFIELD, INC., and CUSHMAN AND WAKEFIELD, OF WASHINGTON, DC, INC. as Junior Appraisers or Associate Appraisers assigned to at least one Cushman &Wakefield office in any state between October 12, 2016 through September 9, 2019 ("Seltz Collective").

43.     There are numerous similarly situated current and former Appraisers and Junior Appraisers throughout the United States who would benefit from the issuance of a Court-supervised notice.  Those similarly situated employees are known to C&W, C&W Western, and C&W DC and are readily identifiable through C&W, C&W Western, and C&W DC's records.

44.     Plaintiffs and the Collective Action Members of the Dixon Collective and the Seltz Collective are similarly situated because, among other things, they all: (a) had the same duties; (b) performed the same tasks; (c) were misclassified as exempt from overtime wages; (d) were paid under the same employment contracts and promissory notes; (e) were required, suffered, or permitted to work, and did work in excess of forty hours per week; and (f) were not paid at a rate of one and one-half times their regular rate of pay for all overtime hours worked.

45.     As part of its regular business practice, C&W, C&W Western, and C&W DC intentionally, willfully, and repeatedly engaged in a uniform pattern, practice, and/or policy of

violating the FLSA with respect to the Collective Action Members of the Dixon Collective and the Seltz Collective.  This policy and pattern or practice included, but is not limited to, willfully: misclassifying Appraisers and Junior Appraisers as exempt from overtime wages; failing to pay Appraisers and Junior Appraisers overtime wages for hours that they worked in excess of forty hours per workweek; and failing to record all of the time that Appraisers and Junior Appraisers worked for the benefit of C&W, C&W Western, and C&W DC.

46.     C&W, C&W Western, and C&W DC were aware or should have been aware that federal law requires it to pay employees an overtime premium for hours worked in excess of forty hours per workweek.

47.     C&W, C&W Western, and C&W DC's deceptive conduct prevented Plaintiffs and all other Collective Action Members from discovering or asserting their claims earlier than they did because C&W, C&W Western, and C&W DC, among other things, repeatedly declared that Appraisers and Junior Appraisers were exempt from overtime.

## CALIFORNIA CLASS ACTION ALLEGATIONS

48.     Plaintiff Dixon, on behalf of herself and all California Class Action Members, re-alleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

49.     Plaintiff Dixon seeks to proceed as a class action with regard to their California law claims pursuant to Federal Rule of Civil Procedure Rule 23 on behalf of the following class of persons:

> All persons employed in California by CUSHMAN AND WAKEFIELD WESTERN, INC., and CUSHMAN AND WAKEFIELD, INC., as an Appraiser (including Junior Appraisers and Senior Appraisers) assigned to at least one Cushman & Wakefield office between August 14, 2014 through May 31, 2021 ("California Class Action Members").

50.     Plaintiff Dixon reserves the right under Federal Rule of Civil Procedure Rule 15 of to amend or modify the class description with greater specificity or further division into subclasses or limitation to particular issues.

51.     **Numerosity**.  The putative class is so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, and the facts on which the

9

829636.11

calculation of that number would be based are within the sole custody and/or control of C&W and C&W Western, upon information and belief, C&W and C&W Western have employed over forty Appraisers in California within the last four years.

52. **Commonality and Predominance**.  Among the proposed class, there is a well-defined community of interest in the questions of law and/or fact involved.  Common questions of law and/or fact predominate over questions that affect only individual California Class Action Members.  Common questions include, but are not limited to:

a. Whether C&W and/or C&W Western is the employer of California Class Action Members;

b. Whether C&W and C&W Western's uniform classification of all California Class Action Members as exempt from overtime violated the California Labor Code;

c. Whether C&W and C&W Western owe California Class Action Members overtime wages for hours worked greater than forty (40) in a week or eight (8) in a day;

d. Whether C&W and C&W Western failed to keep accurate payroll records of hours worked, meal and rest periods taken, and overtime worked in accordance with California law;

e. Whether C&W and C&W Western reimbursed California Class Action Members for cell phone expenses for use during working hours;

f. Whether the wage statements C&W and C&W Western issued to California Class Action Members included all hours worked and/or rates of pay; and

g. Whether C&W and C&W Western's Labor Code violations serve as predicate violations of the UCL;

h. Whether C&W and C&W Western failed to pay Plaintiff Dixon and Class Members all wages due upon termination of employment.

53. **Typicality**.  Plaintiff Dixon's claims are typical of the claims of the Class as all Class Members are similarly affected by C&W and C&W Western's wrongful conduct as complained of herein.  Plaintiff Dixon was subjected to the same violations of her rights under the law and seeks the same types of relief on the same theories and legal grounds as the members of the class she seeks to represent.

54.     **Adequacy of Representation**.  Plaintiff Dixon will fairly and adequately represent and protect the interests of the Class Members.  Plaintiff Dixon's interests are not in conflict with those of the Class.  Plaintiff Dixon's counsel are competent and experienced in litigating large employment class actions and other complex litigation matters, including cases involving factual and legal claims similar to those alleged here.

**FIRST CAUSE OF ACTION**
**Violations of the Fair Labor Standards Act**
**[29 U.S.C. §§ 201 *et seq.*]**

**All Defendants**

55.     Plaintiffs, on behalf of themselves and all Collective Action Members, re-allege and incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

56.     C&W, C&W Western, and C&W DC have been, and continues to be, an employer engaged in interstate commerce within the meaning of the FLSA of the employees identified by the collectives defined herein.

57.     C&W, C&W Western, and C&W DC employed and/or continues to employ Plaintiffs and each of the Collective Action Members within the meaning of the FLSA.

58.     C&W, C&W Western, and C&W DC has had annual gross revenues in excess of $500,000.

59.     Plaintiffs expressly consent in writing to be a party to these collective actions pursuant to 29 U.S.C. § 216(b).  Plaintiff Dixon's written consent to join was previously filed with the Court.

60.     Plaintiff Seltz filed a written consent to join a collective action under 29 U.S.C. § 216(b) in *Seltz v. Cushman & Wakefield, Inc.*, No. 1:18-cv-02092-BAH.

61.     C&W, C&W Western, and C&W DC has had a policy and practice of misclassifying Appraisers and Junior Appraisers, including Plaintiffs and Collective Action Members, as exempt from overtime wages.

62.    C&W, C&W Western, and C&W DC has had a policy and practice of refusing to pay any overtime compensation to Appraisers and Junior Appraisers for hours worked in excess of forty hours per week.

63.    C&W, C&W Western, and C&W DC have violated the FLSA, including §§ 207(a)(1) and 215(a) because C&W, C&W Western, and C&W DC willfully fail to compensate its Appraisers and Junior Appraisers for all hours worked and at a rate not less than one and one-half times their regular rate of pay for work performed in excess of forty hours in a workweek.

64.    As a result of C&W, C&W Western, and C&W DC's misclassification of its Appraisers and Junior Appraisers and its attendant failure to record, report, credit, and/or compensate Plaintiffs and Collective Action Members, C&W, C&W Western, and C&W DC has failed to make, keep, and preserve records with respect to each of its employees sufficient to determine the wages, hours, and other conditions and practices of employment in violation of the FLSA, including §§ 211(c) and 215(a).

65.    C&W, C&W Western, and C&W DC's conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of the statute, 29 U.S.C. § 255(a).

66.    Due to C&W, C&W Western, and C&W DC's FLSA violations, Plaintiffs, on behalf of themselves and all Collective Action Members, are entitled to recover from C&W, C&W Western, and C&W DC unpaid wages, as well as overtime compensation, an additional amount equal to the unpaid wages and overtime as liquidated damages, reasonable attorneys' fees, and costs pursuant to § 216(b) of the FLSA, as well as further relief as described below.

### SECOND CAUSE OF ACTION
**Failure to Pay Overtime Wages**
**[Cal. Labor Code §§ 510, 558, and 1194, and Cal. Code Regs. tit. 8 § 11040]**
**Defendants C&W and C&W Western**

67.    Plaintiff Dixon, on behalf of herself and all California Class Action Members, re-alleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

68.    California Labor Code § 510 and Wage Order No. 4 requires an employer to compensate a non-exempt employee for all work performed in excess of eight hours per workday or

829636.11

forty hours per workweek, at one and one-half times the employee's regular rate of pay.

69.     Plaintiff Dixon and Class Members are non-exempt employees.  Neither of the exemptions to California Industrial Welfare Commission Wage Orders 4-2001, Cal. Code Regs. Tit. 8, § 11070 apply.  During the relevant period, Plaintiff and Class Members have not earned a monthly salary equivalent to no less than two (2) times the State's minimum wage for full-time employment.

70.     Plaintiff Dixon's entire compensation depends on fees generated from projects assigned by C&W and C&W Western.  Plaintiff Dixon and Class Members' ultimate compensation depends on the quantity of work available.  Therefore, Plaintiff and Class Members have not been paid on a salary basis pursuant to 29 C.F.R. § 541.602(a).  See *Ming-Hsiang Kao v. Joy Holiday*, 12 Cal. App. 5th 947, 959 (2017) (since state "law was patterned to some extent on federal law, the general approach in interpreting California law has been to use the federal salary basis test unless some other provision of California law calls for a more protective standard"); DLSE Manual § 51.6.4 (detailing that the DLSE will enforce the federal "salary basis test" to the extent that it does not conflict with "California statutory law, case law, or public policy").

71.     Furthermore, because the promissory notes directly encumber Plaintiff Dixon and Class Members' compensation and allow Defendants to claw back disbursed payments, the compensation received by Plaintiff and Class Members were not made "free and clear" under 29 C.F.R. § 531.35, and thus do not constitutive a salary.  See *Ming-Hsiang Kao*, 12 Cal. App. 5th at 959; see also, *Takacs v. A.G. Edwards and Sons, Inc.*, 444 F. Supp. 2d 1100, 1108 (S.D. Cal. 2006) (finding that a deficit owed to an employer because of diminished commissions made the employee's compensation conditional – not "free and clear" – and therefore not a salary).

72.     C&W and C&W Western misclassified Plaintiff Dixon and Class Members as exempt employees.

73.     During all relevant times, C&W and C&W Western required Plaintiff Dixon and California Class Action Members to work in excess of eight hours per workday and forty hours per workweek.  C&W and C&W Western failed to pay the overtime wages that Plaintiff Dixon and California Class Action Members earned.

74.     Due to C&W and C&W Western's Labor Code violations, Plaintiff Dixon and Class

13

829636.11

1   Members are entitled to recover from C&W and C&W Western unpaid overtime compensation,

2   interest, reasonable attorneys' fees, and costs pursuant to the California Labor Code, as well as further

3   relief as described below.

### THIRD CAUSE OF ACTION
**Failure to Provide Meal Periods**
**[Cal. Labor Code §§ 226.7, 512, and 1194, and Cal. Code Regs. tit. 8 § 11040]**
**Defendants C&W and C&W Western**

7   75.     Plaintiff Dixon, on behalf of herself and all California Class Action Members, re-alleges

8   and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth

9   herein.

10   76.     California Labor Code § 512(a) states, "[a]n employer may not employ an employee for

11   a work period of more than five hours per day without providing the employee with a meal period of

12   not less than 30 minutes.  An employer may not employ an employee for a work period of more than

13   10 hours per day without providing the employee with a second meal period of not less than 30

14   minutes."

15   77.     Wage Order No. 4 states, "[n]o employer shall employ any person for a work period of

16   more than five (5) hours without a meal period of not less than 30 minutes."  If no meal period is

17   provided, the Wage Order requires the employer to "pay the employee one (1) hour of pay at the

18   employee's regular rate of compensation for each workday that the meal period is not provided."

19   78.     California Labor Code § 226.7 states, "[a]n employer shall not require an employee to

20   work during a meal … period mandated pursuant to an applicable statute, or applicable regulation,

21   standard, or order of the Industrial Welfare Commission."  Section 226.7 requires an employer to pay

22   one additional hour of pay at the employee's regular rate if the meal or rest period is not provided.

23   79.     Plaintiff Dixon and Class Members are non-exempt employees.  Neither of the

24   exemptions to California Industrial Welfare Commission Wage Orders 4-2001, Cal. Code Regs. Tit. 8,

25   § 11070 apply.  During the relevant period, Plaintiff Dixon and Class Members have not earned a

26   monthly salary equivalent to no less than two (2) times the State's minimum wage for full-time

27   employment.

28   80.     Plaintiff Dixon's entire compensation depends on fees generated from projects assigned

by Defendants; Plaintiff Dixon and Class Members' ultimate compensation depends on the quantity of work available.  Therefore, Plaintiff Dixon and Class Members have not been paid on a salary basis pursuant to 29 C.F.R. § 541.602(a).  *See Ming-Hsiang Kao*, 12 Cal. App. 5th at 959 (since state "law was patterned to some extent on federal law, the general approach in interpreting California law has been to use the federal salary basis test unless some other provision of California law calls for a more protective standard"); DLSE Manual § 51.6.4 (detailing that the DLSE will enforce the federal "salary basis test" to the extent that it does not conflict with "California statutory law, case law, or public policy").

81.     Furthermore, because the promissory notes directly encumber Plaintiff Dixon and Class Members' compensation and allow Defendants C&W and C&W Western to claw back disbursed payments, the compensation received by Plaintiff Dixon and Class Members were not made "free and clear" under 29 C.F.R. § 531.35, and thus do not constitute a salary.  *See Ming-Hsiang Kao*, 12 Cal. App. 5th at 959; *see also*, *Takacs*, 444 F. Supp. 2d at 1108 (finding that a deficit owed to an employer because of diminished commissions made the employee's compensation conditional – not "free and clear" – and therefore not a salary).

82.     C&W and C&W Western misclassified Plaintiff Dixon and Class Members as exempt employees.

83.     C&W and C&W Western do not have a policy or practice of providing meal periods to California Class Action Members, and C&W and C&W Western has not paid employees premium pay for missed meal periods as required by California Labor Code §§ 226.7 and 512, and Wage Order No. 4.

84.     As a result of C&W and C&W Western's unlawful failure to provide meal periods to all California Class Action Members and C&W and C&W Western's failure to pay an hour of premium pay at the regular rate for each missed meal period, Plaintiff Dixon and California Class Action Members are entitled to recover one hour of pay at their regular rate of compensation for each workday that a meal period was not provided, plus interest, attorney's fees, and costs, as well as further relief as described below.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## FOURTH CAUSE OF ACTION
### Failure to Provide Rest Periods
### [Cal. Labor Code §§ 226.7 and 1194, Cal. Code Regs. tit. 8 § 11040]
### Defendants C&W and C&W Western

85.     Plaintiff Dixon, on behalf of herself and all California Class Action Members, re-alleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

86.     California Labor Code § 226.7 states, "[a]n employer shall not require an employee to work during a … rest … period," and "[i]f an employer fails to provide an employee a ... rest ... period … the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the ... rest ... period is not provided."

87.     Wage Order No. 4 states, "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period.  The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof."  The Wage Orders require an employer to "pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided."

88.     Plaintiff Dixon and Class Members are non-exempt employees.  Neither of the exemptions to California Industrial Welfare Commission Wage Orders 4-2001, Cal. Code Regs. Tit. 8, § 11070 apply.  During the relevant period, Plaintiff Dixon and Class Members have not earned a monthly salary equivalent to no less than two (2) times the State's minimum wage for full-time employment.

89.     Plaintiff Dixon's entire compensation depends on fees generated from projects assigned by Defendants; Plaintiff Dixon and Class Members' ultimate compensation depends on the quantity of work available.  Therefore, Plaintiff Dixon and Class Members have not been paid on a salary basis pursuant to 29 C.F.R. § 541.602(a).  *See Ming-Hsiang Kao*, 12 Cal. App. 5th at 959 (since state "law was patterned to some extent on federal law, the general approach in interpreting California law has been to use the federal salary basis test unless some other provision of California law calls for a more protective standard"); DLSE Manual § 51.6.4 (detailing that the DLSE will enforce the federal "salary

16

829636.11

1  basis test" to the extent that it does not conflict with "California statutory law, case law, or public

2  policy").

3      90.     Furthermore, because the promissory notes directly encumber Plaintiff Dixon and Class

4  Members' compensation and allow Defendants C&W and C&W Western to claw back disbursed

5  payments, the compensation received by Plaintiff Dixon and Class Members were not made "free and

6  clear" under 29 C.F.R. § 531.35, and thus do not constitute a salary.  *See Ming-Hsiang Kao*, 12 Cal.

7  App. 5th at 959; *see also*, *Takacs*, 444 F. Supp. 2d at 1108 (finding that a deficit owed to an employer

8  because of diminished commissions made the employee's compensation conditional – not "free and

9  clear" – and therefore not a salary).

10     91.     C&W and C&W Western misclassified Plaintiff Dixon and Class Members as exempt

11  employees.

12     92.     C&W and C&W Western do not have a policy or practice of providing rest periods to

13  California Class Action Members, and C&W and C&W Western has not paid employees premium pay

14  for missed rest periods as required by California Labor Code § 226.7 and Wage Order No. 4.

15     93.     As a result of C&W and C&W Western's unlawful failure to provide rest periods to all

16  California Class Action Members and C&W and C&W Western's failure to pay an hour of premium

17  pay at the regular rate for each day a rest period was not provided, Plaintiff Dixon and California Class

18  Action Members are entitled to recover one hour of pay at their regular rate of compensation for each

19  workday that a rest period was not provided, plus interest, attorney's fees, and costs, as well as further

20  relief as described below.

21  

**FIFTH CAUSE OF ACTION**
**Failure to Reimburse Business Expenses**
**[Cal. Labor Code § 2802, and Cal. Code Regs. tit. 8, § 11040, 11070]**
**Defendants C&W and C&W Western**

24     94.     Plaintiff Dixon, on behalf of herself and all California Class Action Members, re-alleges

25  and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth

26  herein.

27     95.     California Labor Code § 2802 requires employers to indemnify an employee for all

28  necessary expenditures or losses incurred by the employee in direct consequence of the discharge of

the employee's duties.

96.     During all relevant times, C&W and C&W Western failed to indemnify Plaintiff Dixon and California Class Action Members for their expenses related to use of their personal cell phones for work purposes.  Plaintiff Dixon and California Class Action Members are entitled to indemnification of these work-related expenses plus prejudgment interest pursuant to California Labor Code § 2802.

97.     Plaintiff Dixon, on behalf of herself and similarly situated California Class Action Members, requests relief for these violations and further relief as described below.

## SIXTH CAUSE OF ACTION
### Failure to Furnish Accurate Itemized Wage Statements
**[Cal. Labor Code §§ 226 and 226.3, and Cal. Code Regs. tit. 8 § 11040]**
**Defendants C&W and C&W Western**

98.     Plaintiff Dixon, on behalf of herself and all California Class Action Members, re-alleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

99.     California Labor Code § 226 provides that every employer must furnish each employee with an itemized wage statement that shows the total numbers of hours worked each pay period, gross wages, net wages, all deductions, all applicable hourly rates of pay, the legal name and address of the employer, and other information.

100.    C&W and C&W Western failed to furnish Plaintiff Dixon and California Class Action Members itemized wage statements accurately showing, at a minimum, gross wages, total hours worked, net wages earned, and all applicable hourly rates in effect during the pay period as well as the number of hours corresponding to each hourly rate.

101.    During all relevant times, all California Class Action Members were injured by these failures because, among other things, they were confused about whether they were paid properly, and/or they were misinformed about how many total hours they worked during each pay period.

102.    California Labor Code § 226(e)(1) states that an employee suffering injury as a result of a knowing and intentional failure by an employer to provide accurate itemized wage statements is entitled to recover the greater of all actual damages suffered or fifty dollars ($50) for the initial violation and one hundred dollars ($100) for each subsequent violation, up to four thousand dollars

18

829636.11

($4,000).  Pursuant to California Labor Code § 226(h), Plaintiff Dixon and California Class Action Members are entitled to injunctive relief to ensure C&W's compliance with California Labor Code § 226.

103.     Plaintiff Dixon and California Class Action Members are entitled to an award of costs and reasonable attorneys' fees under California Labor Code § 226(h), as well as further relief as described below.

## SEVENTH CAUSE OF ACTION
### Unfair Competition Law Violations
**[Cal. Business & Professions Code §§ 17200 *et seq.*]**
### Defendants C&W and C&W Western

104.     Plaintiff Dixon, on behalf of herself and all California Class Action Members, re-alleges and reincorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

105.     California Business & Professions Code §§ 17200 *et seq.* prohibits unfair competition in the form of any unlawful, unfair, deceptive, or fraudulent business practices.

106.     C&W and C&W Western has committed unlawful, unfair, deceptive, and/or fraudulent acts as defined by California Business & Professions Code §17200.  C&W and C&W Western's unlawful, unfair, deceptive, and/or fraudulent business practices include, but are not limited to, failing to pay for all hours worked, failing to pay overtime wages, failing to provide mandated meal and rest periods, and failing to indemnify Appraisers for business expenses.

107.     As a result of such unlawful, unfair, and/or fraudulent business practices, C&W and C&W Western reaped ill-gotten benefits and illegal profits at the expense of Plaintiff Dixon and California Class Action Members.

108.     Plaintiff Dixon, on behalf of herself and similarly situated California Class Action Members, requests further relief as described below.

## EIGHTH CAUSE OF ACTION
### Violation of the Private Attorney General Act of 2004 ("PAGA")
**[Cal. Labor Code §§ 2698 *et seq.*]**
### Defendant C&W Western

19

829636.11

109.   Plaintiff Dixon, on behalf of herself and all other aggrieved employees, re-alleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

110.   Plaintiff Dixon is an "aggrieved employee" under PAGA, as she was employed by C&W Western during the applicable statutory period and suffered one or more Labor Code violations. As such, Plaintiff Dixon seeks to recover, on behalf of herself and all aggrieved employees, the civil penalties provided by PAGA, plus reasonable attorneys' fees and costs.

111.   Plaintiff Dixon seeks to recover the PAGA civil penalties through a representative action as permitted by PAGA and the California Supreme Court in *Arias v. Super. Ct.*, 46 Cal. 4th 969 (Cal. Ct. App. 2009).  Class certification of the PAGA claims is not required, but Plaintiff Dixon may seek certification of the PAGA claims.

112.   Plaintiff Dixon seeks to pursue remedies pursuant to PAGA for the following violations:

a.   For C&W Western's failure to pay California Appraisers overtime, Plaintiff Dixon seeks recovery of civil penalties as set forth in California Labor Code § 558.  For C&W Western's failure to provide California Appraisers with meal periods or rest periods, Plaintiff Dixon seeks civil penalties under California Labor Code § 558.

b.   For C&W Western's knowing and intentional failure to provide accurate wage statements, California Labor Code § 226.3 imposes a civil penalty, in addition to any other penalty provided by law, of two hundred fifty dollars ($250) per aggrieved employee for the first violation of California Labor Code § 226(a), and one thousand dollars ($1,000) per aggrieved employee for each subsequent violation.

c.   For C&W Western's failure to keep accurate records as required by California Labor Code § 1174(d), including records of aggrieved employees' overtime hours, driving time, off-site work, weekend hours, holiday hours, and meal periods, C&W Western is subject to a civil penalty of five hundred dollars ($500) under California Labor Code § 1174.5.  C&W Western is also liable for civil penalties under California Labor Code § 558.

d.   For C&W Western's failure to indemnify California Appraisers for all necessary

20

1  business expenditures, C&W Western is liable for the amount civil penalties described in the

2  paragraph below, pursuant to California Labor Code § 2802.

3        e.    For C&W Western's willful failure to pay all wages to an employee who is

4  discharged or quits, the employee's wages continue from the due date at the same rate paid as a penalty

5  under California Labor Code § 203.  The penalty does not continue for more than thirty (30) days.

6  California Labor Code § 256 imposes a civil penalty in an amount not exceeding thirty (30) days' pay.

7      113.   California Labor Code § 2698 *et seq.* imposes a civil penalty of one hundred dollars

8  ($100) per pay period, per aggrieved employee for the initial violation of Labor Code §§ 226.7, 510,

9  512, 558, 1194, and 2802.  For each subsequent violation, the penalty is two hundred dollars ($200)

10  per aggrieved employee, per pay period.

11      114.   True and correct copies of the claim notices filed online with the California Labor and

12  Workforce Development Agency ("LWDA"), LWDA Case Number LWDA-CM-543235-18, copies of

13  which were sent via certified mail to Defendant C&W Western, is attached as Exhibit 1, 2 and 3.  As

14  of today's date, the LWDA has provided no notice to Plaintiff Dixon regarding its intention to

15  investigate or not investigate Plaintiff's claims.

16      115.   Enforcement of statutory provisions to protect workers and to ensure proper and prompt

17  payment of wages is a fundamental public interest.  Plaintiff Dixon's successful enforcement of

18  important rights affecting the public interest will confer a significant benefit for the general public.

19  Private enforcement of these rights is necessary, as no public agency has pursued enforcement.

20      116.   As a result of the violations alleged, Plaintiff Dixon, an aggrieved employee, on behalf

21  of herself and other aggrieved employees, seeks all relief available pursuant to California Labor Code

22  § 2699, including all civil penalties, attorneys' fees, expenses, and costs.

23  **<u>NINTH CAUSE OF ACTION</u>**
**Failure to Pay All Wages Upon Termination**
**[Cal. Labor Code §§ 201, 202, 203, and 256]**
24  **Defendants C&W and C&W Western**

25

26      117.   Plaintiff Dixon, on behalf of herself and all others similarly situated, re-alleges and

27  incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth

28  herein.

829636.11

118.    California Labor Code § 201 provides that any discharged employee is entitled to all wages due at the time of discharge.

119.    California Labor Code § 202 provides that any employee who quits his or her employment is entitled to all wages due within seventy-two (72) hours of notice of his intention to quit, or at the time of quitting if the employee provided seventy-two (72) hours previous notice of his or her intent to quit.

120.    Where an employer willfully fails to pay discharged or quitting employees all wages due as required under the California Labor Code §§ 201 and 202, the employer is liable to such employees under California Labor Code § 203 for waiting time penalties in the amount of one (1) day's compensation at the employees' regular rate of pay for each day the wages are withheld, up to thirty (30) days.

121.    During all relevant times, Defendants C&W and C&W Western knowingly and willfully violated California Labor Code §§ 201 and 202 by failing to pay Plaintiff Dixon and California Class Members who are no longer employed by Defendants C&W or C&W Western all wages owed as alleged herein.  Defendants C&W and C&W Western are therefore liable to Plaintiff Dixon and California Class Members who are no longer employed by Defendants C&W and C&W Western for waiting time penalties as required by California Labor Code § 203.

122.    Plaintiff Dixon, on behalf of herself and similarly situated California Class Members, also requests further relief as described below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the California Class Members and Collective Action Members, respectfully requests this Court to grant relief against Defendants C&W, C&W Western, and C&W DC as follows:

A.    Certify this action as a class action pursuant to Rule 23 for the California Class Members, and appoint Plaintiff Dixon as Class Representative, and her attorneys as Class Counsel against Defendants C&W and C&W Western;

B.    Designate this action as a collective action on behalf of the Collective Action Members and authorize issuance of notice pursuant to 29 U.S.C. § 216(b) to all members of the Dixon Collective

1    and Seltz Collective, apprising them of the pendency of this action and permitting them to timely assert

2    FLSA claims in this action by filing individual consents to opt into this proceeding;

3        C.    Direct class notice to all California Class Action Members;

4        D.    Declare that Defendants C&W and C&W Western misclassified all California Class

5    Members under the California Labor Code as exempt from overtime wages;

6        E.    Declare that Defendants C&W, C&W Western, and C&W DC misclassified all

7    members of the Dixon Collective and Seltz Collective, under the FLSA as exempt from overtime

8    wages;

9        F.    Award unpaid wages, including all overtime compensation and meal and rest period

10   premiums, due under California law and the FLSA, to Plaintiff, Class Members, and Collective Action

11   Members;

12       G.    Award damages for Defendants C&W and C&W Western's failure to provide accurate

13   itemized wage statements;

14       H.    Award statutory penalties for Defendants C&W and C&W Western's failure to pay

15   Plaintiff Dixon and Class Members all wages due upon termination.

16       I.    Award damages and restitution for Defendants C&W and C&W Western's failure to

17   reimburse necessary business expenses;

18       J.    Award civil penalties under California Labor Code § 2698 *et seq.* for violations of

19   Labor Code §§ 203, 226.7, 510, 512, 558, 1194, and 2802, as well as Wage Order 4;

20       K.    Award liquidated damages to Plaintiffs and Collective Action Members as a result of

21   C&W, C&W Western, and C&W DC's willful failure to pay for all wages due as well as overtime

22   compensation pursuant to the FLSA;

23       L.    Award pre-judgment and post-judgment interest;

24       M.    Enjoin Defendants C&W and C&W Western from violating California law;

25       N.    Award costs and expenses of this action;

26       O.    Award reasonable attorneys' fees; and

27       P.    Award such other relief as this Court deems just and proper.

28

## **JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury on each and every cause of action so triable.

Dated: July 1, 2021                                     Respectfully submitted,

GOLDSTEIN, BORGEN, DARDARIAN & HO

Laura L. Ho

Attorneys for Plaintiff

24

829636.11

# Exhibit 1



**G B D H**

**Goldstein, Borgen,
Dardarian & Ho**

Shareholders
Linda M. Dardarian
Laura L. Ho

Of Counsel
Barry Goldstein
David Borgen
Morris J. Baller

June 4, 2018

**Private Attorneys General Act – Online Filing**

Attn: PAGA Administrator

  Re:  Labor Code Private Attorney General Notice Act

To Whom It May Concern:

  This firm represents the aggrieved employee Dimitri Dixon, individually and on behalf of all others similarly situated, who work or worked for Cushman & Wakefield Western, Inc., and/or its corporate affiliates (hereinafter and collectively, "C&W" or "Cushman & Wakefield"), as Appraisers. In that position, employees are tasked with, inter alia, appraising the value of real estate investments made by the firm across a range of assets, researching sales, listing, and rentals for properties, constructing financial models, researching property financial information, preparing appraisals for firm clients, and inspecting property. Ms. Dixon has been employed by C&W as an Appraiser since September 2007.

  C&W has violated several California Labor Code provisions ("Labor Code") in its employment of Ms. Dixon and similarly situated Appraisers and is therefore liable for civil penalties under Labor Code § 2698 *et seq.* We request that your agency investigate the claims alleged below against C&W. This letter is to provide notice of claims for penalties under the Private Attorneys General Act, as amended, Labor Code § 2699.3 ("PAGA") for violations of Labor Code §§ 226.7 (meal and rest periods), 510 (overtime), 512 (meal and rest periods), 558 (penalties and wages for failure to pay all overtime wages and failure to provide either meal periods or premium pay), 226 (wage statements), 1174 (employee payroll records), 2751 (form of commission contracts), as well as California Industrial Welfare Commission Wage Orders 4-2001, Cal. Code Regs. Tit. 8, § 11070 ("Wage Order"). Therefore, the aggrieved employees hereby invite the Labor and Workforce Development Agency to take any action it deems appropriate.

**C&W Misclassifies Appraisers as Exempt**

  Cushman & Wakefield, a global real estate services firm, classifies its Appraisers as exempt from overtime when those Appraisers should be classified as non-exempt. The firm assigns Appraisers to assess the value of individual properties or a portfolio of assets for clients. Appraisers in California perform the same functions as similarly situated employees nationally. These duties include researching comparable sales, listings, and rental information for properties, constructing discounted cash flows and other financial models, researching benchmark rates of return for various properties, assisting in the preparation of appraisals that will support client decision making, as well as inspecting the property and interviewing market stakeholders with

300 Lakeside Drive, Suite 1000, Oakland, CA  94612-3534  Tel 510. 763. 9800  Fax 510. 835. 1417  www.gbdhlegal.com

712061.1

Senior Appraisers.  Appraisers do not sell anything.  Appraisers can work remotely, as Ms. Dixon did on several occasions.

Appraisers are compensated by C&W using a recoverable "draw" system.  Each employee is required to sign a standard promissory note with C&W indicating that they agree to pay C&W a fixed sum on demand, or immediately at the end of the calendar year, which is equal to the amount they receive as compensation for their labor.  Appraisers are then paid a "recoverable draw," periodically against this obligation, which is the sole basis of compensation. Total compensation is derived from the percentage of fees that C&W earns on projects that represents the "valuation [and] advisory assignments" it holds for which employees render services (less broker referral fees, travel costs, supervisory offers, and other miscellaneous costs, all adjusted by employee share if multiple Appraisers work on a project).

While employees are paid a minimum draw – which their employment contract states may not to be reduced "because of the quantity or quality of work" performed – the draw payments made each pay period "are loans to C&W to be repaid to C&W upon demand" under the terms of the promissory note.  If the Appraiser's share of commissions and fees do not reimburse C&W for the advances, the employees must pay C&W from their own funds.  Cushman & Wakefield retain the right, in their sole discretion, to modify the company-wide percentages of fees for certain future assignments by providing 14 days' notice to employees.

Cushman & Wakefield's draw compensation method does not qualify as a salary under the Labor Code.  For employee pay to be considered a salary, and the employee exempt from overtime premiums, for example, it must be a fixed rate of pay that is two times the state minimum wage.  In addition, unless inconsistent with or less protective than California law, courts generally apply the federal salary basis test which requires monetary payments made in the form of a salary be "free and clear" "meaning '[final] and [unconditional].'"

However, the total compensation paid to a C&W Appraiser may in fact be less than two times the state minimum wage if the Appraiser's commissions and fees fall below the amount sufficient to compensate C&W under the promissory note.  In addition, because the Appraiser's total compensation is based on the recoverable draw system – and C&W retains the right to both demand full repayment of the total promissory note and/or change how they calculate the percentage of fees for future assignments – an employee is not guaranteed compensation that is both two times the state minimum wage and free and clear of obligations to repay.

And while the terms of the employee's compensation agreement indicate that the employee's wages will not be reduced because of the quantity or quality of their work, such a reduction in pay is possible, given that compensation is tied to the total valuation of assignments to which the employee renders her services.  Moreover, such a compensation scheme creates a scenario where the employee's compensation is subject to the availability of work (e.g. sufficient value of C&W's portfolio of assets to appraise), a situation which contrasts with the position of the DLSE that a salaried employee's wages should not be reduced if they are ready, willing, and able to work.  Indeed, willful deductions "made in contravention of the salary requirements" nullifies the employee's exempt status.

PAGA Administrator                                -3-                                June 4, 2018

Further, while Appraisers perform office work for C&W under general supervision in the performance of their duties, these duties are routine production tasks unrelated to the setting or execution of business policy. Appraisers conduct research using multiple methods and resources to find comparable properties and valuations to assess C&W assets, construct financial models, and identify the rates of return for various properties. In addition, appraisers assist clients as they prepare appraisals of various properties and, with Senior Appraisers, inspect properties and interview market stakeholders.

These tasks are unrelated to the setting of general business policy, conducting long or short-term planning, or negotiating property transactions, but are more accurately those duties which contribute to the production of services "that the enterprise exists to produce and market." Appraisers do not supervise other employees. They are not responsible for setting corporate strategy or directing property transactions. Appraisers only conduct site visits or meet with clients or stakeholders in the furtherance of their production-related duties to appraise assets for C&W. These routine and low-level tasks do not establish Appraisers – and specifically Ms. Dixon – as exempt administrative employees.

Therefore, because Appraisers are not compensated with a salary and do not perform administrative duties pursuant to Wage Order 4(1)(A)(2) and relevant federal law, they are not properly classified as exempt employees.

### Unlawful Failure to Pay All Overtime Wages

Cushman & Wakefield has violated and continues to violate Labor Code §§ 510 and 558 and Wage Order No. 4(2)(K), (3) because it fails to compensate Appraisers for all overtime wages. Appraisers, including Ms. Dixon, work over forty hours a week and/or eight hours a day for C&W.

Although C&W has knowledge that Appraisers work more than forty hours a week and/or eight hours a day, C&W fails to pay them overtime. Unpaid overtime is due at a rate of 1.5 times an Appraisers regular rate of pay for hours over forty in a week, eight hours in a day, or the first eight hours worked on the seventh consecutive workday in a work week, or 2 times an Appraisers regular rate of pay for hours over twelve in a day or those in excess of eight hours in a day on the seventh consecutive workday. The regular rate of pay includes all compensation, such as non-discretionary bonuses.

Because of its failure to pay all overtime wages, C&W has violated Labor Code §§ 510 and Wage Order 4, and is liable for civil penalties and unpaid wages pursuant to Labor Code §§ 558, 1194, and 2698 *et seq.*

### Unlawful Failure to Provide Meal and Rest Periods or to Provide Pay Premiums for Missed Rest and Meal Periods

Cushman & Wakefield violated and continues to violate Labor Code §§ 226.7 and 512 and Wage Orders No. 4(11)-(12) because it has failed to provide meal and rest periods and to pay premium compensation due its employees for missed meal and rest periods.

PAGA Administrator                                   -4-                                   June 4, 2018

Because C&W incorrectly classifies their Appraisers as exempt employees, they did not provide meal periods or rest periods.  In addition, C&W is aware that it does not provide meal and rest break periods to Appraisers.

As a result, C&W is liable for civil penalties and wages pursuant to Labor Code §§ 558 and 2698 *et seq.*

### Unlawful Failure to Provide Commission Contracts

Cushman & Wakefield's method of compensating Appraisers using commissions fails to satisfy Labor Code § 2751 because it does not give employees a signed copy of the commission contract, and does not obtain a signed receipt from each employee.

### Unlawful Failure to Furnish Compliant Wage Statements

Cushman & Wakefield has violated and continues to violate Labor Code § 226 and Wage Order 4(7) because it willfully fails to furnish wage statements to Appraisers that show all applicable hourly rates in effect during the pay period, the corresponding number of hours worked at each hourly rate by employees, and the correct corporate address.

Pay stubs from C&W do not list the actual hours worked; instead spaces on the pay stub where hours and rates would be listed are blank.  The pay stubs do not reflect the regular rate or the overtime rate.  In addition, on information and belief, the pay stubs provided to Ms. Dixon and similarly situated employees fail to list the correct employer address.  While the pay stubs list 1290 Avenue of the Americas, New York, NY 10104, Ms. Dixon's 2018 promissory note lists 18111 Von Karman Avenue, Suite 1000, Irvine, CA 92612[1] and C&W's corporate address in California, where Ms. Dixon works, is listed as 425 Market St., Suite 2300 San Francisco, CA 94105.  However, neither address is listed on her pay stub.

Because of these violations of Labor Code § 226(a), C&W is liable for civil penalties pursuant to Labor Code §§ 226.3 and 2698 *et seq.*

### Unlawful Failure to Maintain Employee Payroll Records

Cushman & Wakefield has violated Labor Code § 1174 and Wage Order 4(7) because it failed to keep payroll records showing total hours works, inter alia, by not showing overtime hours worked and meal periods taken.  Because of these violations of the Wage Orders and Labor Code § 1174, C&W is liable for civil penalties pursuant to Labor Code §§ 1174.5 and 2698 *et seq.*

---

[1] Ms. Dixon's 2017 promissory note lists 2020 Main St Ste 1000, Irvine, California.

PAGA Administrator                        -5-                        June 4, 2018

     The aggrieved employee on behalf of himself and others similarly situated, hereby invites the Labor and Workforce Development Agency to take any action it deems appropriate.

Sincerely,

Laura L. Ho

LLH/kbm


cc:    (via Certified Mail, Return Receipt Requested)
       Cushman & Wakefield Western, Inc.
       1290 Avenue of the Americas
       New York, NY 10104

       (via Certified Mail, Return Receipt Requested)
       C T Corporation System
       425 Market Street, Suite 2300
       San Francisco, CA 94105

       (via Certified Mail, Return Receipt Requested)
       Cushman & Wakefield Western, Inc.
       1 Maritime Plaza
       San Francisco, CA 94111-3412

       (via Certified Mail, Return Receipt Requested)
       Cushman & Wakefield Western, Inc.
       18111 Von Karman Avenue, Suite 1000
       Irvine, CA 92612





**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

7016 2710 0000 5613 6610

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE 681

Certified Mail Fee
$
Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)        $ _____
☐ Return Receipt (electronic)      $ _____        Postmark
☐ Certified Mail Restricted Delivery $ _____        Here
☐ Adult Signature Required         $ _____
☐ Adult Signature Restricted Delivery $ _____
Postage
$
Total Postage and Fees
$
Sent To CT Corporation System
Street and Apt. No., or PO Box No. 425 Market St. Ste. 2300
City, State, ZIP+4® San Francisco, CA 94104

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

7016 2710 0000 9295 5008

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE 681

Certified Mail Fee
$ 3.45
Extra Services & Fees *(check box, add fee as appropriate)*
☑ Return Receipt (hardcopy)        $ 2.75
☐ Return Receipt (electronic)      $ _____        Postmark
☐ Certified Mail Restricted Delivery $ _____        Here
☐ Adult Signature Required         $ _____
☐ Adult Signature Restricted Delivery $ _____
Postage
$ 0.47
Total Postage and Fees
$ 6.67
Sent To Cushman & Wakefield Western, Inc.
Street and Apt. No., or PO Box No. 8111 Von Karman Ave., Ste. 1000
City, State, ZIP+4® Irvine, CA 92612

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

Goldstein, Borgen, Dardarian & Ho   — 681
300 Lakeside Drive, Suite 1000
Oakland, CA  94612

UNITED STATES POSTAL SERVICE
NEW YORK
NY 100
08 JUN '18
PM 12 L

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

Goldstein, Borgen, Dardarian & Ho   — 681
300 Lakeside Drive, Suite 1000
Oakland, CA  94612

2-953650

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Cushman & Wakefield, Inc.
1811 Von Karman Ave.,
Ste.1000

Irvine, CA 92612

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____
☐ Agent
☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☒ Certified Mail®     ☐ Priority Mail Express™
☐ Registered          ☐ Return Receipt for Merchandise
☐ Insured Mail        ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)     ☐ Yes

2. Article Number
(Transfer from service label)
7016 2710 0000 9295 5008

PS Form 3811, July 2013          Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Cushman & Wakefield
Western, Inc.
1290 Avenue of the Americas
New York, NY 10104

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____
☐ Agent
☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery
Richard Zorn

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☒ Certified Mail®     ☐ Priority Mail Express™
☐ Registered          ☐ Return Receipt for Merchandise
☐ Insured Mail        ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)     ☐ Yes

2. Article Number
(Transfer from service label)
7016 2710 0000 5613 6603

PS Form 3811, July 2013          Domestic Return Receipt

ALERT: AS OF APRIL 30, USPS.COM NO LONGER SUPPORTS OUTDATED BROWSERS. TO CO...

# USPS Tracking®

FAQs  >  (http://faq.usps.com/?articleId=220900)

## Track Another Package  +

**Tracking Number:** 70162710000056136610                    Remove ✕

Your item was delivered to the front desk or reception area at 1:07 pm on June 7, 2018 in SAN
FRANCISCO, CA 94105.

## ✓ Delivered

June 7, 2018 at 1:07 pm
Delivered, Front Desk/Reception
SAN FRANCISCO, CA 94105

**Get Updates** ⌄

---

**Text & Email Updates**                                                    ⌄

---

**Tracking History**                                                        ⌄

---

**Product Information**                                                     ⌄

---

See Less ⌃

# Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

**FAQs (http://faq.usps.com/?articleId=220900)**

**The easiest tracking number is the one you don't have to know.**

With Informed Delivery®, you never have to type in another tracking number. Sign up to:

- See images* of incoming mail.

- Automatically track the packages you're expecting.

- Set up email and text alerts so you don't need to enter tracking numbers.

- Enter USPS Delivery Instructions™ for your mail carrier.

**Sign Up**

**(https://reg.usps.com/entreg/RegistrationAction_input?**

*NOTE: Black and white (grayscale) images show the outside, front of letter-sized envelopes and mailpieces that are processed through USPS automated equipment.
app=UspsTools&appURL=https%3A%2F%2Ftools.usps.com%2Fgo

Exhibit 2



**G|B|D|H**

Shareholders
Linda M. Dardarian
Laura L. Ho

**Goldstein, Borgen,
Dardarian & Ho**

Of Counsel
Barry Goldstein
David Borgen
Morris J. Baller

August 14, 2018

<u>**Private Attorneys General Act – Online Filing**</u>

Attn: PAGA Administrator

Re:    Labor Code Private Attorney General Notice Act – Additional Violations

To Whom It May Concern:

This firm represents the aggrieved employee Dimitri Dixon, individually and on behalf of all others similarly situated, who work or worked for Cushman and Wakefield Western, Inc., and/or its corporate affiliates (hereinafter and collectively, "C&W"), as Appraisers.[1]

We have filed a notice to the Labor Workforce Development Agency on June 4, 2018 (LWDA Case Number LWDA-CM-543235-18) alleging several violations of the California Labor Code, including §§ 226.7 (meal and rest periods), 510 (overtime), 512 (meal and rest periods), 558 (penalties and wages for failure to pay all overtime wages and failure to provide either meal periods or premium pay), 226 (wage statements), 1174 (employee payroll records), as well as California Industrial Welfare Commission Wage Orders 4-2001, Cal. Code Regs. Tit. 8, § 11040 ("Wage Order"). The prior letter discussed the factual bases for those violations, which we re-allege and incorporate herein.

Ms. Dixon now writes to add additional violations of the California Labor Code by C&W, specifically Labor Code § 2802 (failure to reimburse business expenses).

<u>**C&W Failed to Reimburse Employees for All Business Expenses**</u>

C&W requires Appraisers to purchase cellular phones for work-related usage without reimbursing them for the original cost of the device or the cost of monthly payments to maintain service. Because employers are required to reimburse employees for "all necessary expenditures . . . incurred by the employee in direct consequence of the discharge of his or her duties," C&W has violated and continues to violate California Labor Code § 2802.

Ms. Dixon alleges that in or around 2010 or 2011, she was required to purchase a cell phone for work-related purposes. The regional manager of her office, Ryan McCafferty, expressed frustration that Ms. Dixon did not have a cell phone he could call during work hours when Ms. Dixon was away from the office. Mr. McCafferty expressed this frustration to Ms. Dixon's direct supervisor, Lars Platt, and to other members of Ms. Dixon's office. To remedy this concern, Ms. Dixon purchased a cell phone. Ms. Dixon has used the cell phone to conduct

---

[1] Inclusive of those employees who worked as appraisers with titles such as Appraiser, Junior Appraiser, Senior Appraiser, Appraiser Trainee, Associate Director, and Director.

Attn. PAGA Administrator                    -2-                        August 14, 2018

work-related calls, and has continued to make monthly payments to maintain her cell phone service.

Importantly, an employer is required "to reimburse an employee for the reasonable expense of the mandatory use of a personal cell phone." *Cochran v. Schwan's Home Service, Inc.*, 228 Cal.App.4th 1137, 1144 (2014). Moreover, "to be in compliance with *section 2802*, the employer must pay some reasonable percentage of the employee's cell phone bill." *Id.* Therefore, because Ms. Dixon was required to purchase a personal cell phone for work-related purposes, and has never been reimbursed for those expenses, she is entitled to recover a "reasonable percentage" of the phone bill under § 2802.

Ms. Dixon and the aggrieved employees hereby invite the Labor and Workforce Development Agency to take any action it deems appropriate.

Very truly yours,

Laura L. Ho

LLH/A

cc:   (via Certified Mail, Return Receipt Requested)
      Cushman & Wakefield Western, Inc.
      1290 Avenue of the Americas
      New York, NY 10104

      (via Certified Mail, Return Receipt Requested)
      C T Corporation System
      425 Market St., Suite 2300
      San Francisco, CA 94105

      (via Certified Mail, Return Receipt Requested)
      Cushman & Wakefield Western, Inc.
      18111 Von Karman Avenue, Suite 1000
      Irvine, CA 92612

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$ 3.45

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $ 2.75
☐ Return Receipt (electronic)      $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery $

Postage
$ 0.47

Total Postage and Fees
$ 6.67

Sent To  C.T. Corporation System
Street and Apt. No., or PO Box No.  425 Market St., Ste. 2300
City, State, ZIP+4®  San Francisco, CA 94105

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$ 3.45

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $ 2.75
☐ Return Receipt (electronic)      $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery $

Postage
$ 0.47

Total Postage and Fees
$ 6.67

Sent To  Cushman & Wakefield Western, Inc.
Street and Apt. No., or PO Box No.  18111 Von Karman Ave., Ste. 1000
City, State, ZIP+4®  Irvine, CA 92612

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$ 3.45

Extra Services & Fees (check box, add fee as appropriate)
☑ Return Receipt (hardcopy)        $ 2.75
☐ Return Receipt (electronic)      $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery $

Postage
$ 0.47

Total Postage and Fees
$ 6.67

Sent To  Cushman & Wakefield Western, Inc.
Street and Apt. No., or PO Box No.  1290 Avenue of the Americas
City, State, ZIP+4®  New York, NY 10104

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

Exhibit 3

681
10.01
2



Shareholders
Linda M. Dardarian
Laura L. Ho
James Kan

**Goldstein, Borgen,
Dardarian & Ho**

Of Counsel
Barry Goldstein
David Borgen
Morris J. Baller

August 16, 2019

**Private Attorneys General Act – Online Filing**

Attn: PAGA Administrator

    Re:    Labor Code Private Attorney General Notice Act – Additional Violations

To Whom It May Concern:

    This firm represents the aggrieved former employee Dimitri Dixon, individually and on behalf of all others similarly situated, who work or worked for Cushman and Wakefield Western, Inc., and/or its corporate affiliates (hereinafter and collectively, "C&W"), as Appraisers.[1]

    We filed a notice to the Labor Workforce Development Agency on June 4, 2018 (LWDA Case Number LWDA-CM-543235-18) alleging several violations of the California Labor Code, including §§ 226.7 (meal and rest periods), 510 (overtime), 512 (meal and rest periods), 558 (penalties and wages for failure to pay all overtime wages and failure to provide either meal periods or premium pay), 226 (wage statements), 1174 (employee payroll records), as well as California Industrial Welfare Commission Wage Orders 4-2001, Cal. Code Regs. Tit. 8, § 11040 ("Wage Order"). We filed a notice to the LWDA on August 14, 2018 to add additional violations of California Labor Code § 2802 (failure to reimburse employees for all business expenses). The prior letters discussed the factual bases for those violations, which we re-allege and incorporate herein.

    Ms. Dixon now writes to add additional violations of the California Labor Code by C&W, specifically Labor Code § 203 (failure to pay all wages due upon termination).

**C&W Failed to Pay Wages Due Upon Termination**

    C & W has violated California Labor Code §§ 201 and 202 by willfully failing to pay all compensation due and owing to all former Appraisers at the time their employment was terminated, including failure to pay overtime wages.

    Pursuant to §§ 203 and 256 of the Labor Code, Plaintiff and similarly situated individuals are now also entitled to recover up to thirty days of wages due to Defendant's "willful" failure to comply with the statutory requirements of sections 201 and 202. Additionally, because C&W

---

[1] Inclusive of those employees who worked as appraisers with titles such as Appraiser, Junior Appraiser, Senior Appraiser, Appraiser Trainee, Associate Director, and Director.

PAGA Administrator                          -2-                          August 16, 2019

violated California Labor Code §§ 201, 202 and 203, C&W is liable for civil penalties pursuant
to California Labor Code §§ 203, 256, and 2698 *et seq*.

Ms. Dixon alleges that on April 15, 2019, she was notified of her termination from C&W,
effective December 10, 2018.  C&W failed to pay Ms. Dixon all of her wages due upon her
termination.  Additionally, after Ms. Dixon's employment ended, C&W demanded repayment of
her draw amounts, a total of $15,632.54.  Therefore, Ms. Dixon is entitled to recover up to thirty
days of wages and additional civil penalties.

Ms. Dixon and the aggrieved employees hereby invite the Labor and Workforce
Development Agency to take any action it deems appropriate.

Sincerely,

Laura L. Ho

LLH/kbm

cc:     (via Certified Mail, Return Receipt Requested)
        Cushman & Wakefield Western, Inc.
        1290 Avenue of the Americas
        New York, NY 10104

        (via Certified Mail, Return Receipt Requested)
        C T Corporation System
        425 Market Street, Suite 2300
        San Francisco, CA 94105

        (via Certified Mail, Return Receipt Requested)
        Cushman & Wakefield Western, Inc.
        18111 Von Karman Avenue, Suite 1000
        Irvine, CA 92612

**U.S. Postal Service™**
## CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$

Extra Services & Fees *(check box, add fee as appropriate)*
☒ Return Receipt (hardcopy)        $ 2.80
☐ Return Receipt (electronic)      $
☒ Certified Mail Restricted Delivery  $ 3.50
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery $

Postmark Here

Postage
$ .50

Total Postage and Fees
$ 6.80

Sent To  C T Corporation System
Street and Apt. No., or PO Box No.  818 West Seventh St Suite 930
City, State, ZIP+4®  Los Angeles, CA 90017

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

7016 2710 0000 9295 7149



**U.S. Postal Service™**
## CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$ 3.50

Extra Services & Fees *(check box, add fee as appropriate)*
☒ Return Receipt (hardcopy)        $ 2.80
☐ Return Receipt (electronic)      $
☐ Certified Mail Restricted Delivery  $
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery $

AUG 16 2019  Postmark Here

Postage
$ .50

Total Postage and Fees
$ 6.80

Sent To  Cushman & Wakefield Western, Inc.
Street and Apt. No., or PO Box No.  1290 Avenue of the Americas
City, State, ZIP+4®  New York, NY 10104

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

7016 2710 0000 9295 7118

**U.S. Postal Service™**
## CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$ 3.50

Extra Services & Fees *(check box, add fee as appropriate)*
☒ Return Receipt (hardcopy)        $ 2.80
☐ Return Receipt (electronic)      $
☐ Certified Mail Restricted Delivery  $
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery $

AUG 16 2019  Postmark Here

Postage
$ .50

Total Postage and Fees
$ 6.80

Sent To  Cushman & Wakefield Western, Inc.
Street and Apt. No., or PO Box No.  18111 Von Karman Avenue, Suite 1000
City, State, ZIP+4®  Irvine, CA 92612

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

7016 2710 0000 9295 7132



**U.S. Postal Service™**
## CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$ 3.50

Extra Services & Fees *(check box, add fee as appropriate)*
☒ Return Receipt (hardcopy)        $ 2.80
☐ Return Receipt (electronic)      $
☐ Certified Mail Restricted Delivery  $
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery $

AUG 16 2019  Postmark Here

Postage
$ .50

Total Postage and Fees
$ 6.80

Sent To  C T Corporation System
Street and Apt. No., or PO Box No.  425 Market Street, Suite 2300
City, State, ZIP+4®  San Francisco, CA 94105

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

7016 2710 0000 9295 7125

**Card 1**

SENDER: *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

CT Corporation System
818 West Seventh Street
Suite 930
Los Angeles, CA 90017

9590 9402 4578 8278 3061 09

2. Article Number (Transfer from service label)
7016 2710 0000 9295 7149

PS Form 3811, July 2015 PSN 7530-02-000-9053

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
CT CORPORATION SYSTEM
X 818 West Seventh Street        ☐ Agent  ☐ Addressee
B. Received by (Printed Name)    C. Date of Delivery
Los Angeles, CA 90017  SEP 03 2019
D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

**Card 2**

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

SENDER: *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Cushman & Wakefield Western, Inc.
1290 Avenue of the Americas
New York, NY 10104

9590 9402 4578 8278 3060 86

2. Article Number (Transfer from service label)
7016 2710 0000 9295 7118

PS Form 3811, July 2015 PSN 7530-02-000-9053

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X _____        ☐ Agent  ☐ Addressee
B. Received by (Printed Name)    C. Date of Delivery  8-20-19
D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Cushman & Wakefield Western, Inc.
18111 Von Karman Avenue, Suite 1000
Irvine, CA 92612

9590 9402 4578 8278 3060 31

2. Article Number (Transfer from service label)
7016 2710 0000 9295 7132

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X [signature] ☐ Agent ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
Alyssa Lopez

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053   Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

C T Corporation System
425 Market Street, Suite 2300
San Francisco, CA 94105

9590 9402 4578 8278 3060 48

2. Article Number (Transfer from service label)
7016 2710 0000 9295 7125

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053   Domestic Return Receipt

